BARNES, EXR., APPELLEE, *v.* UNIVERSITY HOSPITALS OF CLEVELAND; MEDLINK OF OHIO, INC. ET AL., APPELLANTS.

[Cite as *Barnes v. Univ. Hosps. of Cleveland,* 119 Ohio St.3d 173, 2008-Ohio-3344.]

(No. 2007–0140—Submitted February 5, 2008—Decided July 9, 2008.)

Lanzinger, J.

{¶ 1} This discretionary appeal was accepted on the issues of whether a retired judge who was never elected to the bench, but who served as a judge by appointment, is eligible to act as a private judge and whether the trial court is required to analyze the jury's punitive damage award under *BMW of N. Am., Inc. v. Gore* (1996), 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809. We answer yes to both.

## Background

{¶ 2} This case involves an action for medical malpractice and wrongful death against University Hospitals of Cleveland and appellants, MedLink of Ohio, Inc., and The MedLink Group (collectively, "MedLink"), on behalf of Natalie Barnes, who on October 19, 2000, had a coronary embolism and eventually died after her catheter was dislodged during kidney dialysis.

{¶ 3} Natalie, 24 years old, suffered from both mental retardation and epilepsy. She had developed kidney disease and began regular hemodialysis treatment at University Hospitals early in 2000. To facilitate her hemodialysis treatment, Natalie required a device called a "perma cath," a catheter that is surgically

inserted through the skin into a vein down to the heart and implanted in the chest. The skin grows over a cuff at the end of the catheter to hold the device in place. The catheter has two external ports that are opened for access to the patient's blood during dialysis: after dialysis, the two ports are capped.

{¶ 4} Andrea Barnes transported her daughter Natalie to dialysis and stayed with her during the treatment. Noticing that Natalie had a tendency to pull at her catheter, Barnes contacted the Cuyahoga County Board of Mental Retardation and Developmental Disabilities ("MRDD") and asked for the services of a medical aide to sit with Natalie on the days she could not go with her to dialysis. MRDD in turn contacted MedLink, a provider of home healthcare services.

{¶ 5} On September 1, 2000, representatives from MedLink and MRDD met with Andrea Barnes. She instructed them to make sure that the MedLink aide did not leave Natalie's side during dialysis and warned them of Natalie's propensity to pull at her catheter. Accordingly, MedLink was hired to prevent Natalie from removing her catheter.

{¶ 6} The first aide provided by MedLink, who was able to keep Natalie's hands away from the catheter without incident, accompanied her on only a few occasions. Endia Hill was selected to replace the original aide. Hill was advised that Natalie had attempted to pull at her catheter in the past and that she needed to be closely monitored. Hill, however, was not qualified under MedLink's criteria for healthcare aides because she did not have a high school diploma and she had a felony conviction on her record. Hill did disclose the felony conviction on her employment application but did not disclose her lack of a high school diploma. Although a diploma was a minimum requirement for employment with MedLink, MedLink did not follow up Hill's lack of information about high school in the blank provided on the employment application form.

{¶ 7} On October 19, 2000, Hill took Natalie to dialysis. Once Natalie's catheter was attached, Hill left the dialysis unit, went to the hospital cafeteria, and then walked around the hospital for several hours. Dialysis technician Larry Lawrence was attending Natalie and three other patients that day. Lawrence testified that while he was engaged in another task, he turned and saw that Natalie's catheter was detached and lying on the floor. Lawrence initiated CPR, and an emergency code was called. Natalie's medical chart indicated that she had suffered an air embolism, which caused cardiac arrest. Afterwards, Natalie was severely brain damaged and unable to eat or breathe without life support. Eventually, after being taken off life support, Natalie died.

{¶ 8} Andrea Barnes, individually and as executor of Natalie's estate,[1] then filed a complaint alleging that MedLink and University Hospitals had violated the

---

1. Appellee Robert Barnes was later substituted as executor of Natalie's estate.

applicable standards of care owed to her daughter. After proceeding with discovery, the parties chose to submit the dispute to a private judge for a jury trial pursuant to R.C. 2701.10, the statute allowing for "private judging." The parties signed a written agreement to that effect, which was approved by the judge originally assigned to the case. Before opening arguments, the parties confirmed on the record that they had consented to the private judge's authority and that they were forgoing any rights to challenge that authority on appeal.

{¶ 9} The trial began on April 25, 2005, and concluded on May 3, 2005. After deliberations, the jury awarded judgment to Andrea Barnes, finding MedLink 90 percent liable and University Hospitals ten percent liable for Natalie's death. The jury awarded Barnes $100,000 on the survivorship claim and $3,000,000 on the wrongful death claim. The jury also awarded Barnes $3,000,000 in punitive damages. Later, the trial court assessed attorney fees and expenses and entered a final judgment against MedLink totaling $6,803,460.[2]

{¶ 10} After trial and after attorney fees and expenses had been assessed, MedLink filed motions with the private judge seeking reduction or vacation of the punitive damage award and requesting a hearing on those motions. The judge denied the motions without an evidentiary hearing and filed an opinion. In his opinion, he held that the jury's punitive damages award was not "grossly excessive" under the standard announced by the United States Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003), 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585.

{¶ 11} On March 7, 2006, MedLink filed an original action in prohibition with this court, arguing that the judge who had presided over the case—the retired judge selected to function as the private judge—lacked the proper qualifications to preside over the trial, because he had been appointed to a judgeship twice by Governor Taft, instead of being elected to the judiciary. MedLink, however, abandoned its action for prohibition before this court could rule. *MedLink Group, Inc. v. Glickman*, 109 Ohio St.3d 1448, 2006-Ohio-2192, 846 N.E.2d 876 (granting MedLink's application for dismissal).

{¶ 12} MedLink then appealed the trial court's judgment, asserting among other claims that the presiding judge had failed to review the punitive-damages award according to the three specific guideposts set forth in the United States Supreme Court's decision in *Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809. MedLink also argued that the jury's verdict was void because the judge who presided over the trial did not meet the qualifications to serve as a private judge under R.C. 2701.10, having never been elected to the bench.

---

2. University Hospitals is no longer a party in this case.

{¶ 13} In affirming the trial court's judgment, the Eighth District Court of Appeals upheld the punitive damages award without discussing or applying the standards enunciated in *Gore*. The appellate court also upheld the presiding judge's eligibility to hear the case, holding that R.C. 2701.10 clearly does not differentiate between retired judges who were elected to their seats and those who were appointed.

{¶ 14} MedLink appealed the decision, asserting five propositions of law, of which we accepted two. The first one states, "In reviewing an award of punitive damages, the trial court must independently analyze the three guideposts set forth by the United States Supreme Court in *BMW of North America, Inc. v. Gore* (1996), 517 U.S. 559 [116 S.Ct. 1589, 134 L.Ed.2d 809]." The second proposition asks us to review whether a judge who has never been elected to a judgeship in Ohio may serve as a private judge under R.C. 2701.10. We address those issues in reverse order.

### The Retired Judge's Eligibility to Receive Civil Referrals

{¶ 15} The first issue as set forth in proposition three concerns whether a retired judge who has never been elected to a judgeship in Ohio may, pursuant to R.C. 2701.10, properly receive civil referrals, or as is commonly stated, act as a private judge. MedLink argues that, pursuant to R.C. 2701.10, only elected judges may serve as private judges, and because the private judge presiding over the case had been appointed rather than elected, he did not have jurisdiction to hear the case. In response, Barnes counters that MedLink had the duty to timely object to the judge's authority in the trial court to preserve the error for appeal.

{¶ 16} The statute that establishes private judging, R.C. 2701.10, provides:

{¶ 17} "(A) *Any voluntarily retired judge, or any judge who is retired under Section 6 of Article IV, Ohio Constitution*, may register with the clerk of any court of common pleas, municipal court, or county court for the purpose of receiving referrals for adjudication of civil actions or proceedings, and submissions for determination of specific issues or questions of fact or law in any civil action or proceeding, pending in the court. There is no limitation upon the number, type, or location of courts with which a retired judge may register under this division. Upon registration with the clerk of any court under this division, the retired judge is eligible to receive referrals and submissions from that court, in accordance with this section. Each court of common pleas, municipal court, and county court shall maintain an index of all retired judges who have registered with the clerk of that court pursuant to this division and shall make the index available to any person, upon request." (Emphasis added.)

{¶ 18} The text of R.C. 2701.10 clearly does not differentiate between appointed judges and elected judges concerning eligibility for private judging. Either a "voluntarily retired judge" or "*any judge* who is retired under Section 6 of Article IV, Ohio Constitution" (emphasis added) may be eligible to serve as a private judge.

{¶ 19} MedLink contends that the Supreme Court Rules for the Government of the Judiciary exclude the judge in this case from service as a private judge through the rules' definition of a "voluntarily retired judge." Gov.Jud.R. VI(1)(C)(2) states:

{¶ 20} "As used in this rule, 'voluntarily retired judge' means any person who was elected to and served on an Ohio court without being defeated in an election for new or continued service on that court. 'Voluntarily retired judge' does not include either of the following:

{¶ 21} "(a) A judge who has been removed or suspended without reinstatement from service on any Ohio court pursuant to the Supreme Court Rules for the Government of the Judiciary or who has resigned or retired from service while a complaint was pending under those rules;

{¶ 22} "(b) A judge who has resigned from office between the date of defeat in an election for further service on that court and the end of his or her term."

{¶ 23} The rule seems to limit the term "voluntarily retired judge" to one who has been "elected to" an Ohio court. The omission of appointed judges from the definition overlooks the alternative method by which judges take office. For this reason, the definition appears to be underinclusive in its scope. The definition in Gov.Jud.R. VI(1)(C) of "voluntarily retired judge" improperly restricts eligibility to elected judges when there is no evidence that the legislature had any such restriction in mind in drafting R.C. 2701.10. Thus, the definition violates the principle that rules for implementing a statute may not add to or restrict the terms of the statute.

{¶ 24} The Ohio Rules for the Government of the Judiciary were promulgated pursuant to this court's authority granted by Section 5(B), Article IV of the Ohio Constitution. The category of "voluntarily retired judge" is but one of two categories specified by R.C. 2701.10 as eligible for civil referrals. The other is "any judge who is retired under Section 6 of Article IV, Ohio Constitution." The Ohio Constitution recognizes the two methods of judicial selection, in that Section 6, Article IV provides for mandatory judicial retirement, by prohibiting *election or appointment* if the judge will be 70 years old at the time his or her term begins.[3] Because the statute refers to the constitutional provision that recognizes

---

3.   {¶ a} Section 6(C), Article IV of the Ohio Constitution provides:

the two methods of judicial selection, the statute may be read to include both elected and appointed judges, thereby harmonizing the rule and the statute.

{¶ 25} Thus, the statute itself is not ambiguous and neither it nor the rule excludes nonelected retired judges from accepting civil referrals. Accordingly, we hold that a retired judge who has never been elected but who has been appointed to the position of judge is eligible to receive civil referrals and serve as a private judge pursuant to R.C. 2701.10.

{¶ 26} Furthermore, before the trial began, all parties to the litigation signed a court-approved agreement with respect to the presiding judge's authority to hear the case. On the day of trial, all parties stated on the record before opening arguments that they consented to the presiding judge's authority and waived any rights to contest that issue on the appeal. Only after an adverse decision did MedLink seek to disqualify the judge.

{¶ 27} Although it signed a waiver, MedLink argues that the presiding judge did not have subject matter jurisdiction over the case and that MedLink cannot now be estopped from contesting the judge's authority because subject matter jurisdiction cannot be waived. We addressed a similar argument and held that this objection concerns a procedural irregularity rather than jurisdiction. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851. Comparing subject matter jurisdiction with jurisdiction over the particular case, we concluded in *J.J.* that a party alleging a lack of jurisdiction has a duty to object in the trial court and timely preserve the error for appeal. Id. at ¶ 15. When a court possesses subject matter jurisdiction, "procedural irregularities in the transfer of a case to a visiting judge affect the court's jurisdiction over the particular case," not its subject matter jurisdiction. Id. Clearly, the common pleas court in this case has jurisdiction over tort actions such as the instant case. Therefore, MedLink had a duty to object in the trial court to the presiding judge's authority to preserve the alleged error for appeal. Since MedLink did not object, the error, if any, has been waived.

{¶ 28} In light of the foregoing, by signing an agreement allowing the retired judge to preside over the trial and waiving its rights to appeal in open court, MedLink lost its right to challenge his authority.

---

{¶ b} "No person shall be elected or appointed to any judicial office if on or before the day when he shall assume the office and enter upon the discharge of its duties he shall have attained the age of seventy years. Any voluntarily retired judge, or any judge who is retired under this section, may be assigned with his consent, by the chief justice or acting chief justice of the supreme court to active duty as a judge and while so serving shall receive the established compensation for such office, computed upon a per diem basis, in addition to any retirement benefits to which he may be entitled. Laws may be passed providing retirement benefits for judges."

{¶ 29} We note that the dissent would have us find a conflict between this case and *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145. First, this case was tried before we released our opinion in *Russo*. Second, in *Russo*, we held that R.C. 2701.10 and Gov.Jud.R. VI authorize only bench trials. Id. at paragraph one of the syllabus. In so holding, the majority stated that "R.C. 2701.10, in accordance with Section 4(B), Article IV of the Ohio Constitution, confers subject-matter jurisdiction on certain retired judges to decide civil actions pending in common pleas and other courts." Id. at ¶ 23. However, in light of our discussion above about subject-matter jurisdiction, we have no choice but to declare the statement in *Russo* incorrect because subject-matter jurisdiction is conferred on *courts*, rather than on judges. We therefore hold that the presiding judge had proper jurisdiction to preside over the trial, because there is no requirement in the statute or in the Ohio Constitution that a retired judge is eligible for civil referrals pursuant to R.C. 2701.10 only if he or she was elected rather than appointed.

## Punitive Damages

{¶ 30} In its first proposition of law, appellant MedLink argues essentially that the punitive damages imposed by the jury were grossly excessive and therefore unconstitutional. MedLink asks us to adopt the standard for reviewing punitive damages set forth in *Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809.

{¶ 31} Since at least 1991, the United States Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment imposes a limit on the size of punitive damage awards. *Pacific Mut. Life Ins. Co. v. Haslip* (1991), 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1. See also *Honda Motor Co. v. Oberg* (1994), 512 U.S. 415, 420, 114 S.Ct. 2331, 129 L.Ed.2d 336 (citing *TXO Prod. Corp. v. Alliance Resources Corp.* (1993), 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366). The determination of whether a punitive damage award is unconstitutionally excessive is rooted in the Due Process Clause. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.* (2001), 532 U.S. 424, 433–434, 121 S.Ct. 1678, 149 L.Ed.2d 674. An award of punitive damages violates due process when it can be categorized as "grossly excessive" in relation to the state's legitimate interests in punishing unlawful conduct and deterring its repetition. *Gore*, 517 U.S. at 568, 116 S.Ct. 1589, 134 L.Ed.2d 809.

{¶ 32} A line of cases announced by the United States Supreme Court, starting with *Gore*, guides us in reviewing punitive damage awards alleged to be unconstitutionally excessive. In *Gore*, the court instructed that elementary notions of fairness "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." 517 U.S. at 574, 116 S.Ct. 1589, 134 L.Ed.2d 809. The court set forth three guideposts to use in evaluating whether a lack of notice renders a

punitive damage award grossly excessive and therefore unconstitutional: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm or potential harm suffered by the plaintiff and the punitive-damages award, and (3) the difference between the award and the civil penalties authorized or imposed in comparable cases. Id. at 575, 116 S.Ct. 1589, 134 L.Ed.2d 809.

{¶ 33} The first guidepost, the degree of reprehensibility of the defendant's conduct, is "the most important indicium of the reasonableness of a punitive damages award." Id. A review of reprehensibility includes consideration of whether (1) "the harm caused was physical as opposed to economic," (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," (3) "the target of the conduct had financial vulnerability," (4) "the conduct involved repeated actions or was an isolated incident," and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm, 538 U.S. at 419, 123 S.Ct. 1513, 155 L.Ed.2d 585. The harm in this case was physical rather than economic. Both the jury and the appellate court concluded that there was evidence that MedLink acted at least recklessly when it hired Endia Hill, who did not meet even the minimum educational requirements and had previously been convicted of a felony.

{¶ 34} The second guidepost and the "most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." Gore, 517 U.S. at 580, 116 S.Ct. 1589, 134 L.Ed.2d 809. But the United States Supreme Court, like this court, has consistently rejected the notion of a bright-line mathematical formula for assessing the reasonableness of punitive damage awards. The court recognized that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." Id. at 582, 116 S.Ct. 1589, 134 L.Ed.2d 809. This court has allowed a 6,250–to–one damages ratio to stand, but we have also invalidated a 20–to–one ratio. See Wightman v. Consol. Rail Corp. (1999), 86 Ohio St.3d 431, 715 N.E.2d 546; Dardinger v. Anthem Blue Cross & Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121 (invalidating the award under Ohio's Due Process Clause). The court in Gore referred to the 500–to–one ratio in that case as "breathtaking." 517 U.S. at 583, 116 S.Ct. 1589, 134 L.Ed.2d 809.

{¶ 35} In the instant case, the parties disagree over which amounts to compare for purposes of assessing reasonableness if a court applies the second Gore guidepost. The jury had awarded Barnes $100,000 on her survivorship claim and $3,000,000 on the wrongful death claim. The numbers composing the ratio of actual damages to punitive damages is a determination to be made by the trial court in the first instance, subject to appellate review.

{¶ 36} The third indicium of excessiveness set forth in *Gore* involves "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct." 517 U.S. at 583, 116 S.Ct. 1589, 134 L.Ed.2d 809. In announcing this guidepost, the court stated that a "reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgment concerning appropriate sanctions for the conduct at issue.'" Id. at 575, 116 S.Ct. 1589, 134 L.Ed.2d 809, quoting *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.* (1989), 492 U.S. 257, 301, 109 S.Ct. 2909, 106 L.Ed.2d 219 (O'Connor, J., concurring in part and dissenting in part). In *Gore,* the maximum statutory fine available for a similar infraction was $2,000, a very small amount compared to the $2 million verdict. Here the trial court, subject to appellate review, must compare other sanctions available under Ohio law for the wrong done in determining whether the punitive damage award was excessive.

{¶ 37} The importance of the three guideposts was reiterated in *Cooper Industries,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674. There, the court instructed federal appellate courts to conduct a de novo review of a trial court's determination of the constitutionality of punitive damage awards to ensure that the award is based upon an "'application of law, rather than a decisionmaker's caprice.'" Id. at 436, 121 S.Ct. 1678, 149 L.Ed.2d 674, quoting *Gore,* 517 U.S. at 587, 116 S.Ct. 1589, 134 L.Ed.2d 809.

{¶ 38} In *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585, the court reversed the Utah Supreme Court's reinstatement of a $145 million punitive damage award, holding that "[w]hile States enjoy considerable discretion in deducing when punitive damages are warranted, each award must comport with the principles set forth in *Gore.*" *State Farm* at 427, 123 S.Ct. 1513, 155 L.Ed.2d 585. Thus, while *Gore* advised that states apply the guideposts, *State Farm* turned the advisory into an edict.

{¶ 39} We have already applied the *Gore* guideposts ourselves, although we have never explicitly held that a lower court must apply them. See *Dardinger,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121 (holding that a punitive damage award was not grossly excessive under the federal Constitution after considering the award in light of the three *Gore* guideposts); *Wightman,* 86 Ohio St.3d 431, 715 N.E.2d 546 (analyzing a punitive damage award for adequate notice of the possible sanction using the *Gore* guideposts).

{¶ 40} Thus, a court reviewing an award of punitive damages for excessiveness must independently analyze (1) the degree of reprehensibility of the party's conduct, (2) the ratio of the punitive damages to the actual harm inflicted, and (3) sanctions for comparable conduct. The principles set forth in *Gore* must be implemented with care to ensure both reasonableness and proportionality. *State*

*Farm*, 538 U.S. at 428, 123 S.Ct. 1513, 155 L.Ed.2d 585. The court of appeals erred in failing to consider these factors in assessing the award in this case.

## Conclusion

{¶ 41} Based on the foregoing, we affirm in part and reverse it in part. We affirm the judgment of the court of appeals on the eligibility of the presiding judge in this case. A retired judge who was never elected but who served as a judge by appointment of the governor is eligible to receive civil referrals and serve as a private judge pursuant to R.C. 2701.10. However, we reverse that portion of the appellate court's judgment pertaining to the award of punitive damages and remand the case to the court of appeals for review of the award in light of the three *Gore* guideposts.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOYER, C.J., and O'CONNOR and CUPP, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 42} I concur in paragraph one of the syllabus and in the bulk of the majority opinion. I write separately solely because I would not remand the cause to the court of appeals.

{¶ 43} Paragraph two of the syllabus purports to require courts of appeals to consider the guideposts set forth in *BMW of N. Am., Inc. v. Gore* (1996), 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809. But courts of appeals need no such direction from us. *Gore* itself so instructs them. The judges sitting on the various courts of appeals in Ohio are well aware of *Gore* and are responsible for adhering to it and all other due process interpretations emanating from this court or the United States Supreme Court.

{¶ 44} The appellants in the court of appeals extensively briefed the *Gore* guideposts. The court of appeals stated, "Following a thorough review of the record, the briefs, and the arguments of all parties, we find no merit in any of the assignments of error * * *." *Barnes v. Univ. Hosps. of Cleveland*, Cuyahoga App. Nos. 87247, 87285, 87710, 87903, and 87946, 2006-Ohio-6266, 2006 WL 3446244, ¶ 84. Instead of assuming that the court of appeals ignored the *Gore* guideposts, we should presume that the court did what it says it did: it considered all relevant constitutional standards. Thus, there is simply no reason

to remand this cause so that the court of appeals can repeat its review of the *Gore* guideposts. Accordingly, I concur in part and dissent in part.

---

O'DONNELL, J., dissenting.

{¶ 45} I respectfully dissent.

{¶ 46} The majority's resolution of this case is in conflict with our decision in *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, where in paragraph one of our syllabus, we stated: "R.C. 2701.10 and Gov.Jud.R. VI require bench trials in referrals of civil actions or submission of issues or questions, pursuant to the statute and the rule, which both specify that cases referred and issues submitted to a retired judge pursuant to these provisions must·be tried and determined by a judge."

{¶ 47} The jurisdiction of a retired judge emanates from R.C. 2701.10, not from the authority or agreement of the parties to the action. The proper analysis here is to consider the plain language of the statute, as we did in *Russo*. There, we stated, "R.C. 2701.10(B)(1) provides that the parties and retired judge must expressly agree that the action referred shall be 'tried, determined, and adjudicated by that retired judge.'" *Russo* at ¶ 38. Additionally, R.C. 2701.10(D) specifies that "[a] retired judge to whom a referral is made under this section shall try all of the issues on the action or proceeding, shall prepare relevant findings of fact and conclusions of law, and shall enter a judgment in the action or proceeding in the same manner as if he were an active judge of the court." See also *Russo* at ¶ 38. The plain language of the statute permits courts to transfer cases to retired judges for conduct of bench trials only. Thus, the outcome of this analysis dictates that in this instance, the retired judge proceeded to conduct a jury trial without authority.

{¶ 48} This court has held that "parties may not confer jurisdiction upon a court by mutual consent, where none would otherwise exist * * *." *Beatrice Foods Co. v. Porterfield* (1972), 30 Ohio St.2d 50, 59 O.O.2d 76, 282 N.E.2d 355, paragraph two of the syllabus. Therefore, the parties here could not agree to confer jurisdiction upon the retired judge to conduct a jury trial.

{¶ 49} This court recently acknowledged that when a judge disregards what the law clearly commands, the judge acts without authority. *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 21. We stated: "If a judge imposes a sentence that is unauthorized by law, the sentence is unlawful. 'If an act is *unlawful* it is not erroneous or voidable, but it is wholly unauthorized and

void.' (Emphasis sic.)" Id., quoting *State ex rel. Kudrick v. Meredith* (1922), 24 Ohio N.P. (N.S.) 120, 124, 1922 WL 2015, *3.

{¶ 50} Here, a retired judge conducted a jury trial in contravention of R.C. 2701.10, which authorizes only bench trials. These actions were unauthorized, unlawful, and therefore void.

{¶ 51} Accordingly, I respectfully dissent. I would reverse the judgment of the court of appeals, vacate the verdict, and remand this case to the trial court for further proceedings. If the parties request a jury trial, then those proceedings should be conducted by a judge elected or appointed in accordance with law.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

Bashein & Bashein Co., L.P.A., and W. Craig Bashein; Becker & Mishkind Co., L.P.A., and Michael F. Becker; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee.

Isaac, Brant, Ledman & Teetor, L.L.P., James M. Roper, J. Stephen Teetor, and Jessica K. Philemond, for appellant MedLink.

Bricker & Eckler, L.L.P., and Anne Marie Sferra, urging reversal for amicus curiae, Ohio Association of Civil Trial Attorneys.