[Cite as *Molek v. Nusseibeh*, 2015-Ohio-5403.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| CHARLOTTE MOLEK | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | | Hon. Sheila G. Farmer, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| RAED NUSSEIBEH, ET AL. | : | | Case No. 2015CA00085 |
| | : | | |
| Defendant-Appellants | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2012CV03502

JUDGMENT:                    Affirmed/Reversed in Part &
                             Remanded

DATE OF JUDGMENT:            December 21, 2015

APPEARANCES:

For Plaintiff-Appellee                For Defendants-Appellants

JEFF M. LEWIS                         AMANDA L. WALLS
500 South Fourth Street               4684 Douglas Circle, NW
Columbus, OH 43206                    P.O. Box 35459
                                      Canton, OH 44735-5459
DAVID E. BUTZ
4775 Munson Street, NW
P.O. Box 36963
Canton, OH 44735

*Farmer, J.*

{¶1} Appellant, Raed Nusseibeh, owned Advanced Auto Insurance Network, LLC, a "non-standard" insurance agency in Canton, Ohio. Appellee, Charlotte Molek, owns a "standard" insurance agency in Farmington, Pennsylvania. Appellee was seeking to expand her business into Ohio. On November 18, 2010, appellee purchased Advanced Auto's assets via an Asset Purchase Agreement. The parties also executed an Assignment of Commissions Agreement and a Security Agreement.

{¶2} On December 17, 2012, appellee filed an amended complaint against appellant, Advanced Auto, and 942 LTD, a company formed by appellant Nusseibeh after the asset sale, alleging twelve counts: fraudulent/fraud inducement, breach of contract, aiding and abetting, tortious interference with contract, willful and wanton breach of contract, promissory estoppel, unjust enrichment, breach of implied duty of good faith, negligent misrepresentation, declaratory judgment, permanent injunction, and piercing the corporate veil. On April 15, 2013, appellant filed an amended answer and counterclaim, alleging breach of contract. A bench trial commenced on September 24, 2013. By amended judgment entry filed April 13, 2015, the trial court found in favor of appellee on all of her claims except for the claims of aiding and abetting and breach of the implied duty of good faith. The trial court also found in favor of appellee on appellants' counterclaim. The trial court awarded appellee as against appellants, jointly and severally, $549,641.50 in compensatory damages, $250,000.00 in punitive damages, $184,365.40 in attorney fees, and costs of the proceeding.

{¶3} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4}   "THE TRIAL COURT ERRED BY ENTERING JUDGMENT IN FAVOR OF APPELLEE CHARLOTTE MOLEK ON HER CLAIM OF FRAUD BECAUSE SUCH JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVDENCE."

II

{¶5}   "THE TRIAL COURT ERRED IN IN (SIC) ENTERING JUDGMENT IN FAVOR OF APPELLEE CHARLOTTE MOLEK ON HER CLAIM FOR BREACH OF CONTRACT AND IN ITS COMPUTATION AND AWARD OF COMPENSATORY DAMAGES AGAINST APPELLANTS."

III

{¶6}   "THE TRIAL COURT ERRED BY FAILING TO ENTER JUDGMENT AS A MATTER OF LAW IN FAVOR OF APPELLANTS ON PLAINTFF'S FOR CLAIMS OF PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT BECAUSE SUCH CLAIMS ARE IMPROPER WHEN THERE IS AN EXPRESS CONTRACT."

IV

{¶7}   "THE TRIAL COURT ERRED IN AWARDING PUNITIVE DAMAGES IN THE AMOUNT OF 250,000 AGAINST APPELLANTS BECAUSE SUCH AN AWARD IS EXCESSIVE UNDER THE OHIO REVISED CODE AND IS AN UNCONSTITUTIONAL VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS."

V

{¶8}   "THE TRIAL COURT ERRED BY ALLOWING THE ADMISSION OF SURPRISE EVIDENCE THAT TAINTED THE ENTIRE TRIAL."

I

{¶9} Appellants claim the trial court erred in finding for appellee on her fraud claim as the decision is against the manifest weight of the evidence. We disagree.

{¶10} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶11} In *Burr v. Stark County Board of Commissioners,* 23 Ohio St.3d 69 (1986), paragraph two of the syllabus, the Supreme Court of Ohio found the elements of fraud to be as follows:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e)

justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

{¶12} In its amended judgment entry filed April 13, 2015, the trial court concluded the following on the fraud claim:

The Court finds Plaintiff has proven, by clear and convincing evidence, that during negotiations leading to her execution of the Closing Documents, Nusseibeh and Advanced made numerous material misrepresentations of fact regarding the significant valuable return on her investment in the purchase of the assets of Advanced that Plaintiff would receive. Specifically, Nusseibeh and Advanced made numerous material misrepresentations of facts regarding: (1) the true advertising expenses that were necessary to enable Advanced to generate the income represented by Nusseibeh; (2) the cost of advertising in the Yellow Pages; (3) the amount of gross income generated by Advanced, as the deposits reflected in the bank statements did not match the gross income reflected in the Schedule Cs provided by Nusseibeh to Plaintiff; and, (4) the representation that Advanced's Schedule Cs and his personal tax returns for 2008 and 2009 had been filed with the Federal government, thereby providing Plaintiff a heightened indicia of accuracy. The Court finds the advertising issue most damaging. Instead of costs of $17,300 per year as represented by Nusseibeh/Advanced, in fact it is closer to $200,000. The

Court finds that Advanced was an "advertising driven business." This Court is convinced that the evidence demonstrated that there is a direct correlation between phonebook advertising and commissions/profit generated by Advanced.

The Court finds Plaintiff has proven, by clear and convincing evidence, that during negotiations leading to her execution of the Closing Documents, Nusseibeh and Advanced failed to disclose material facts in knowingly: (1) failing to disclose that the income tax returns provided to Plaintiff had not been filed with the Federal government; (2) failing to disclose the advertising expenses necessary to generate the net income claimed by Nusseibeh to have been advertising expenses necessary to generate the net income claimed by Nusseibeh to have been generated by Advanced; (3) failing to disclose that Advanced had no errors and omissions insurance coverage, meaning that it was illegally selling policies of insurance as well as breaching its contract with its insurance providers, potentially making the policies sold void and the earned commissions subject to refund; (4) failing to disclose that Advanced had fraudulently represented to its insurance providers that it had errors and omissions coverage; (5) failing to disclose that Advanced had fraudulently underreported its premium volume to its errors and omissions carrier in violation of Ohio law; (6) failing to advise Plaintiff of claims against Advanced in the amount of over $400,000; and, (7) failing to advise

Plaintiff that several insurance carriers had ceased operations in the state of Kentucky where Advanced generated substantial business.

Nusseibeh, both individually and on behalf of Advanced, expressly represented to Plaintiff that information provided to her by himself and his accountants regarding the business prospects, income, expenses, and liabilities of Advanced was true, accurate, and complete. These representations were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

{¶13} Appellants challenge three specific findings of the trial court. First, appellants argue there was sufficient proof that the advertising expense erroneously reported to appellant was not the driving force in the success of the agency, but that appellant Nusseibeh was the major reason for the agency's success. Appellants argue it is not the volume of calls, but the closing ratio of calls to successful issuance of policies that is the greater measure. Appellants claim appellee's five percent closing ratio is the reason for the fall off in business. Second, appellants argue the misstatement of commission revenue was refuted by appellee's admission that she checked the figures, and there was evidence that the figures were correct and the business was viable. Third, appellants argue the failure to provide the Schedule Cs did not constitute fraud because appellant Nusseibeh had no duty to inform appellee that the returns were not filed.

{¶14} Throughout the five volumes of transcript, nondisclosure of the amount of advertising needed to generate the claimed gross income was understated.

{¶15} In the Schedule Cs given to appellee, the amount of advertising is listed as an expense of $17,300, when in fact that amount was only for advertising in one market. Vol. 1 T. at 73-75, 196-197; Plaintiff's Exhibit 6. Appellants placed many advertisements in many cities. *Id.* at 191. Appellant Nusseibeh admitted he informed appellee of a $17,300 advertising expense, when in fact it was $40,000 per year, and over $100,000 was incurred over two years. Vol. 5 T. at 16, 20-21, 23. Appellant Nusseibeh conceded he never informed appellee of the true advertising expenses. *Id.* at 24-27. The proper amounts of advertising expenses were not listed in the Schedule Cs that appellant Nusseibeh used as a justification of his actual business expenses.

{¶16} Appellants argue the volume of the business was not advertising-driven, but an independent witness, Christopher Lucco, a regional sales manager for User-Friendly Phonebook, testified appellant Advanced was "an above-average client based on annual purchases" and the business was advertising-driven. Vol. 1 T. at 177, 194-195.

{¶17} The documented items given to appellee to justify gross receipts and expenses were Schedule Cs that were not filed and were not verified by the accountant who prepared them. Vol. 1 T. at 66-68, 70-72. The purported tax returns and projections were based not on audited books, but information provided by appellant Nusseibeh. *Id.* at 66-68, 72. The accountant did not know if the returns had been filed or not, and did not mark the documents sent to appellee as "drafts." *Id.* at 82. The accountant was not provided with any backup to support the purported returns, just an

income and expense statement provided by appellant Nusseibeh.  *Id.* at 101.  It is undisputed that the tax returns were not filed until after the commencement of the litigation, and appellant Nusseibeh never informed appellee of this fact.  Vol 1 T. at 89, Vol. 5 T. at 27, 30.  Appellant Nusseibeh claimed at some point, an accountant instructed him not to file any tax returns following his 1997 bankruptcy.  Vol. 2 T. at 157, Vol. 4 T. at 88.  Appellant Nusseibeh was well aware that appellee would have no independent verification of the expenses outside the tax returns.  Vol. 5 T. at 10-12. Under his direction, his own statement of premium volume was purposely understated in his applications for professional liability insurance (Errors and Omission Coverage). *Id.* at 46-49.

{¶18}  It is also undisputed that after the advertising contract ran out, appellee experienced a significant drop in sales calls and premiums written.  Vol. 1 T. at 267, Vol. 3 T. at 128.  Appellant Nusseibeh argues the drop was a result of management style (hands-on versus absent owner) and lack of a good closing ratio, as well as appellee's inexperience in running a non-standard insurance agency as opposed to her previous experience in a standard agency i.e., "bottom feeding" versus an established clientele.

{¶19}  Appellee relied on the numbers provided by appellants and never expected the figures to be inaccurate.  Vol. 3 T. at 36-39, 43.  She envisioned rapid growth and anticipated a positive cash flow of $323,102 based upon the documents (income tax returns and Schedule Cs) provided by appellants' accountant.  *Id.* at 57.

{¶20}  Upon review, we find sufficient credible evidence was presented to allow the trier of fact to conclude that appellants made material misrepresentations and

appellee relied upon them to her detriment. The trial court's finding of fraud is supported by the evidence.

{¶21} Assignment of Error I is denied.

II

{¶22} Appellants claim the trial court erred in finding in favor of appellee on her breach of contract claim and in its computation of compensatory damages in the amount of $549,641.50. We disagree.

{¶23} In its amended judgment entry filed April 13, 2015, the trial court awarded compensatory damages as a result of the fraudulent acts of appellant and not on the breach of contract claim:

The Court finds Plaintiff has proven, by a preponderance of the evidence, that she has incurred special damages as a direct and proximate result of the Nusseibeh's/Advanced's fraudulent acts. The true value of Advanced's assets on the date that Plaintiff purchased same was $77,202.50, meaning that Plaintiff has overpaid for said assets in the amount of $549,641.50, due to the false and fraudulent representations made by Nusseibeh, and the court therefore awards Plaintiff the sum of $549,641.50 against all Defendants, jointly and severally.

{¶24} Because damages were not awarded for the breach of contract claim, we find the arguments on the issue to be moot. In addition, given our decision in

Assignment of Error I on the fraud claim, we find the trial court did not err in its computation on compensatory damages.  Vol. 3 T. at 226-234.

{¶25}  Assignment of Error II is denied.

### III

{¶26}  Appellants claim the trial court erred in finding in favor of appellee on her claims for promissory estoppel and unjust enrichment.  We disagree.

{¶27}  Because damages were not awarded for these claims, we find the arguments hereunder to be moot.

{¶28}  Assignment of Error III is denied.

### IV

{¶29}  Appellants claim the trial court erred in awarding punitive damages in the amount of $250,000.00 as the amount violates the cap set in R.C. 2315.21(D)(2)(a); therefore, the award is grossly excessive and a violation of their constitutional rights to due process.  We agree in part.

{¶30}  R.C. 2315.21 governs punitive damages.  Subsection (C) states the following:

(C) Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master

knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

(2) The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant.

{¶31} Subsections (D)(1) and (2)(a) and (b) state the following:

(D)(1) In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages and the amount of those damages.

(2) Except as provided in division (D)(6) of this section, all of the following apply regarding any award of punitive or exemplary damages in a tort action:

(a) The court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section.

(b) If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten percent of the employer's or individual's net worth when the tort was committed up to a maximum of

three hundred fifty thousand dollars, as determined pursuant to division (B)(2) or (3) of this section.

{¶32} In *Barnes v. University Hospitals of Cleveland,* 119 Ohio St.3d 173, 2008-Ohio-3344, ¶ 31, the Supreme Court of Ohio stated, "[a]n award of punitive damages violates due process when it can be categorized as 'grossly excessive' in relation to the state's legitimate interests in punishing unlawful conduct and deterring its repetition," and held the following at paragraph two of the syllabus:

A court reviewing an award of punitive damages for excessiveness must independently analyze (1) the degree of reprehensibility of the party's conduct, (2) the ratio of the punitive damages to the actual harm inflicted by the party, and (3) sanctions for comparable conduct.  (*BMW of N. Am., Inc. v. Gore* (1996), 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809, applied.)

{¶33} In its amended judgment entry filed April 13, 2015, the trial court stated the following:

The Court finds that Plaintiff has established by the requisite proof that Nusseibeh's/Advanced's fraud was aggravated and egregious, and that their conduct showed a conscious disregard for the rights of Plaintiff and that such disregard has caused Plaintiff substantial financial harm.

The Court finds that in addition to Advanced, Nusseibeh is personally liable for punitive damages, since it has long been recognized in Ohio that where fraudulent conduct occurs, the trial court will look through the corporate structure. *John Palasics v. Steven Kerr* (Ohio App. 8 Dist.), 1991 WL 243655, *citing Kalfas v. Board of Liquor Control* (1963), 4 Ohio App. 2d 108.

The court finds that an award of $250,000 in punitive damages is justified in this case, and therefore renders judgment against all Defendants, jointly and severally, for said sum.

{¶34} Clearly the trial court was in the best position to evaluate the nature of the fraud and to qualitatively analyze the amount of appellants' reprehensibility.

{¶35} Given that the trial court awarded $549,641.50 in compensatory damages and $250,000.00 in punitive damages, the punitive damage award did not violate the statutory cap set forth in R.C. 2315.21(D)(2). However, appellant Nusseibeh's actions in attempting to help appellee with her diminished revenue and his continued acceptance of deferred payment for his share of the commissions from insurance premiums per the terms of the parties' Asset Purchase Agreement are factors that substantially mitigate against ill will and malice. Vol. 3 T. at 289-291, Vol. 4 T. at 76, 100, 106-110, 113-116, 118-119. There is no indication of ill will or malice, but clearly an attempt to seize the moment when appellant Nusseibeh had an inexperienced buyer. Appellee was inexperienced in managing or evaluating a business of this nature. Therefore, we remand the matter for reconsideration of the punitive damage award

under R.C. 2315.21(D)(2) and/or for consideration of the appropriate amount of punitive damages.

{¶36}  Assignment of Error IV is granted in part.

V

{¶37}  Appellants claim the trial court erred in permitting appellee to present a "surprise" witness at the trial, Janet Wilson, who was not identified during the discovery process, and claims the trial court gave great weight to this witness's testimony.  We disagree.

{¶38}  A trial court has discretion in admitting the testimony of a surprise witness. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83 (1985).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶39}  Janet Wilson was an employee of USXS, the insurance company that provided errors and omissions coverage to appellants, which had lapsed in 2010.  Vol. 2 T. at 212.  Appellants objected to her being called as a witness because they were not informed of her until the Friday prior to trial via email.  *Id.* at 202-206.  The trial court ruled the following (*Id.* at 206-207):

THE COURT: Well, I let you both kind of call people at the last minute.  I'll give you the same courtesy.  I mean I haven't been real happy with the way documents have went between both sides, tax returns haven't been filed.

So I'm going to let her testify because I think you need to have everything on the merits. I will decide how much merit I'll put on it, but you have had three days advance. You gave them something in three days, then I don't know why you wouldn't let them. I'm going to allow them to call that witness too. It's going to work both ways.

{¶40} Appellants also objected to the testimony as to its relevancy, as it constituted improper character evidence to prove appellant Nusseibeh purposefully mislead appellee, as well as being cumulative and repetitive. *Id.* at 207-208. The trial court overruled this objection. *Id.* at 208.

{¶41} Evid.R. 403 governs exclusion of relevant evidence and states the following:

**(A) Exclusion mandatory**

Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**(B) Exclusion discretionary**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶42} Appellants argue by entering a finding of fraud, the trial court put emphasis on this testimony as evident in its amended judgment entry filed April 13, 2015:

Nusseibeh, as part of Advanced's assets, sold Plaintiff the rights to commissions that were to be paid by insurance companies in exchange for Advanced's having sold valid policies to its customers.  However, after January 2, 2010, Advanced had no errors and omissions coverage, as said coverage had lapsed due to nonpayment, and therefore was not legally licensed to sell insurance policies, a fact admitted by Nusseibeh. *R. II, pp. 106-7, 212-4; Defendants' Exhibit A.*  In 2010, Nusseibeh directed his employee, Jennifer North, to send a document certifying that Advanced had procured errors and omissions insurance coverage (a document that he knew to have been falsified) to several insurance carriers for who Advanced wrote business.  Nusseibeh ordered the falsified document to be sent so that Advanced could continue to stay in business and sell insurance policies, telling Ms. North to do whatever she needed to do to "keep the business going/afloat." *R. III pp. 116-27, 192-201; Plaintiff's Exhibit 8.*  Nusseibeh and Advanced were fully aware at the time they made these material misrepresentations that they had no intention of satisfying said promises to provide accurate or complete financial and other data or of providing accurate and complete financial

and other data in the first instance with respect to Advanced. *R. V, pp. 17-31.*

\*\*\*

Nusseibeh, both individually and on behalf of Advanced, expressly represented to Plaintiff that information provided to her by himself and his accountants regarding the business prospects, income, expenses, and liabilities of Advanced was true, accurate, and complete. These representations were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred. Defendants in their proposed findings of facts and conclusions of law, paragraph 40 and 41, claim because of Nusseibeh's "inattention to detail", there were no formal profit or loss statements for the agency, or filed tax returns. The Court finds this inexcusable and material to the transaction, and even if believed, negligent.

{¶43} Ms. Wilson testified that errors and omissions coverage was necessary in order to write insurance in Ohio. Vol. 2 T. at 210. Appellant Nusseibeh also testified the coverage was necessary to sell insurance in Ohio. *Id.* at 106-107, 116, 118.

{¶44} Ms. Wilson testified "E&O coverage" was written for appellant Advanced for 2008 and 2009, but was not renewed for 2010. Vol. 2 T. at 212. Ms. Wilson was asked to review Plaintiff's Exhibit 8, a declarations page purportedly issued by her company. *Id.* at 216. Ms. Wilson explained the exhibit was not a typical declarations

page issued by USXS, as the page had been altered. *Id.* The effective dates were different, and the policy number was incorrect for a renewal policy. *Id.* at 216-217. In 2008, the premium financial company, UPAC, issued a notice of cancellation for nonpayment of premium. *Id.* at 227; Plaintiff's Exhibit 12. Ms. Wilson identified Plaintiff's Exhibit 13, a full application for errors and omissions coverage dated January 2, 2008. *Id.* at 227. Included in the application is a statement of the aggregate premium volume for the year. *Id.* at 228. According to the applications made by appellants, the premiums increased $100,000 from 2007 through 2009. *Id.* at 229-230.

{¶45} When examined about the errors and omissions coverage for 2010, appellant Nusseibeh could not remember if it had expired. *Id.* at 126. He identified the same exhibits as Ms. Wilson identified. *Id.* at 128-129. On cross-examination, Ms. Wilson admitted she never any contact with appellant Nusseibeh. *Id.* at 232.

{¶46} Appellant Nusseibeh explained the numbers in the 2008 application for the year 2009 would have been "gotten" from "the same place that the numbers" were "gotten" that were given to appellee. *Id.* at 132-133. As the trial court noted, the issue was whether the numbers declared on the applications as to the aggregate premiums for the year which appellants presented to appellee was relevant to appellee's fraud claim. *Id.* at 150-151.

{¶47} In reviewing appellant Nusseibeh's testimony vis-á-vis Ms. Wilson's testimony, we find her testimony was relevant to the issue of fraud. Further, the genesis of the testimony was rooted in appellant Nusseibeh's own records and applications for his error and omissions coverage. Based upon appellant Nusseibeh's own admissions

from his own records, we find undue prejudice did not occur with Ms. Wilson's testimony that was not already contained in the evidence presented.

{¶48} Upon review, we find the trial court did not err in permitting Ms. Wilson to testify and in relying on her testimony.

{¶49} Assignment of Error V is denied.

{¶50} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, J.

Baldwin, J. concur and

Hoffman, P.J., concurs in part and dissents in part.

*Hoffman, P.J., concurring in part and dissenting in part*

{¶51} I concur in the majority's analysis and disposition of Appellants' first, second, third, and fifth assignments of error.

{¶52} I respectfully dissent from the majority's decision to reverse and remand part of Appellants' fourth assignment of error as it relates to the punitive damage award. I would overrule the assignment of error in toto and affirm the trial court's full award on punitive damages.


_____

HON. WILLIAM B. HOFFMAN