MARY J. BOYLE, J.:
{¶ 1} Defendant-appellant, Niederst Management, Ltd. ("Niederst"), appeals from the trial court's denial of its motion for judgment notwithstanding the verdict, remittitur, or for a new trial. It raises one assignment of error for our review:
[T]he trial court erred by denying Niederst Management, LTD's motion for a new trial, or alternatively a remittitur or judgment notwithstanding the verdict given the improper argument by Mr. Kassay's counsel, the jury's excessive damages awards, and the absence of legally sufficient evidence to support the jury's damage awards.
{¶ 2} Finding no merit to the assignment of error, we affirm.
Procedural History and Factual Background
{¶ 3} On October 15, 2014, Kassay filed a complaint against Niederst, Lisa Weth, and Denise Pacak alleging wrongful termination based on disability discrimination, failure to provide reasonable accommodation, unlawful retaliation in violation of R.C. 4112.02(I), and intentional infliction of emotional distress.[1] The case proceeded to a jury trial where the following evidence was presented.
{¶ 4} Niederst is a property management company that owns a number of apartment buildings. As part of its property management business, Niederst hired and trained individuals as pest-control technicians to exterminate bed bugs in its buildings. Pest-control technicians are responsible for lifting heavy equipment, including *1044 fans (35 lbs.), power cords (75 lbs.), and furnaces (240 lbs.). Two technicians are required to move each furnace. When exterminating bed bugs in apartments on higher floors of Niederst's buildings that do not have elevators, technicians are required to carry the furnaces up the stairs.
{¶ 5} Niederst had a high turnover rate for its technicians. Additionally, a number of technicians that Niederst hired had disciplinary issues, including tardiness and absenteeism, damaging or losing company property, and trespassing.
{¶ 6} In August 2012, Niederst hired Kassay as a pest-control technician. According to Kassay's supervisor, Lisa Weth, Kassay was a good employee and had no performance issues. On October 24, 2013, Kassay showed up to work wearing a brace on his left wrist. According to Kassay, he had worn the brace to work on occasions because he suffered from a chronic wrist disability that was the result of an injury he suffered at a previous job for another company. One of Kassay's coworkers told Weth that Kassay was wearing a brace to work. Weth met with Kassay and informed him that she would have to speak to the human resources department about his brace because she was concerned that his injury may put him or others in danger while carrying the heavy equipment.
{¶ 7} Weth informed Kassay that based on instructions from the human resources department's director, Pacak, he would have to complete Family and Medical Leave Act ("FMLA") paperwork and be able to work without "any limitations." Weth told Kassay that she was not sure why he needed to fill out FMLA paperwork because she believed that it did not pertain to him. As a result, she told him that if he had any questions or concerns to speak with Pacak. According to Weth, she expected Kassay to complete and submit the paperwork and return to work within a week, although she did not say that she told Kassay what her expectations were.
{¶ 8} Kassay reached out to Weth on a number of occasions after that meeting to discuss his return to work and express his frustrations. Weth told Kassay that he had to reach out to Pacak. Kassay then made multiple attempts to contact the human resources department, but received no response. As a result, he continued to go to work through the next week. On October 29, 2013, however, Weth sent him a text message informing him that he was being taken off of the work schedule until he completed the FMLA paperwork. She also informed him that according to instructions from Pacak and Sean Whiteman, vice president of Niederst, he could not return to work until he completed the FMLA paperwork and received a "return-to-work note from the doctor."
{¶ 9} The next day, Kassay went to the human resources department and met with Pacak, who reiterated that he needed to complete the FMLA paperwork and obtain medical documentation indicating that he could work without restrictions. At trial, Pacak agreed that Niederst had a policy requiring that "employees must be able to work full time, full duty, with absolutely no restrictions in order to be able to work and be employed[.]" At trial, Pacak testified that she did not give Kassay a deadline by which he was to complete and submit the FMLA paperwork. Neither Weth nor Pacak, however, asked if Kassay was still able to perform his work duties while wearing the brace.
{¶ 10} After his meeting with Pacak, Kassay tried to contact someone at Niederst every day or "every other day" but was unable to get through to anyone. At trial, he testified that he was unable to schedule an immediate appointment with his doctor because his doctor was out of *1045 the country. Kassay also testified that when he was finally able to arrange an appointment with a doctor and presented the FMLA paperwork, the doctor told Kassay that he would not fill it out because it would constitute fraud since Kassay still intended to work.
{¶ 11} During the first week of November, Kassay contacted Weth and told her that he finally met with his doctor and had the appropriate medical documentation. Weth told him to contact Pacak. When Kassay called Pacak, she informed him that he had lost his job because he failed to show or notify his supervisor that he was not coming in to work for two straight days, violating Niederst's attendance policy, and that under that policy's terms, Niederst considered Kassay to have voluntarily resigned.
{¶ 12} According to Niederst's handbook, "[e]mployees must call in to report their absence each day unless prior notification has been given to cover a longer period of time." The handbook also states, "Employees who are absent two (2) consecutive work days without notifying their supervisor are considered to have resigned." Weth explained, however, that a suspended employee does not have to call into work to report his absence if the human resources department has a "return-to-work date" established for that employee.
{¶ 13} At trial, Kassay called Weth, Pacak, and himself to the stand. After he rested his case, Niederst, Pacak, and Weth moved for a directed verdict, which the court denied. The defendants then presented their case in chief, recalling Pacak and Weth. After resting their case, the defendants renewed their motion for a directed verdict, which the court denied.
{¶ 14} The jury returned a verdict in favor of Kassay and against all of the defendants individually and unanimously found Niederst liable.[2]
{¶ 15} As to Niederst, it awarded Kassay $32,329 in economic damages and $248,900 in noneconomic damages, for a total of $281,229.[3] The case proceeded to the punitive damages phase, where Kassay recalled Weth and Pacak and additionally called Adrina Niederst, the owner of Niederst, to the stand. Defendants cross-examined all of the witnesses, but did not present any on their own behalf. The jury imposed punitive damages on Niederst in *1046 the amount of $250,000.[4] The court also awarded Kassay $201,854.84 in attorney fees, one year's worth of front pay, and prejudgment interest for which all of the defendants were jointly and severally liable.
{¶ 16} Subsequent to trial, Niederst and Pacak timely filed a motion for judgment notwithstanding the verdict ("JNOV"), remittitur, or for a new trial which the court denied.[5] Niederst appeals that denial.
Law and Analysis
{¶ 17} In its sole assignment of error, Niederst argues that the trial court erred when it denied its motion for JNOV, remittitur, or for a new trial. Niederst did not challenge the jury's finding of liability in its motion; instead, it challenged the jury's awards for damages.
A. JNOV
{¶ 18} Niederst argues that the trial court erred in denying its motion for JNOV because the noneconomic and punitive damages were not supported by the evidence. Specifically, Niederst argues that Kassay's testimony regarding his emotional distress was not sufficient to award noneconomic damages and Kassay's proof of malice was not sufficient to award punitive damages.
{¶ 19} Civ.R. 50(B) allows a party to "serve a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion[.]" "If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment[.]" Id.
{¶ 20} We review the trial court's ruling on a motion for JNOV de novo. Environmental Network Corp. v. Goodman Weiss Miller, L.L.P. , 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, ¶ 23. On review, "we must test whether the evidence, construed most strongly in favor of [the] appellee[ ] is legally sufficient to sustain the verdict." Id. Accordingly, neither the weight of the evidence nor the credibility of the witnesses is considered when undertaking this review. Texler v. D.O. Summers Cleaners & Shirt Laundry Co. , 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998).
1. Noneconomic Damages
{¶ 21} Niederst first argues that Kassay's self-serving testimony, without corroborating evidence, was insufficient to support the jury's award of noneconomic damages in the amount of $248,900.
{¶ 22} R.C. 2315.18(A)(4) defines "noneconomic damages" as "nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, [or] assistance, * * * mental anguish, and any other intangible loss." Here, the trial court's instructions to the jury, which both parties agreed to, stated that when deciding an amount for noneconomic damages the jury should "consider nature, character, seriousness and duration of any emotional pain, suffering, inconvenience, mental anguish *1047 and loss of enjoyment of life Kassay may have experienced."
{¶ 23} Niederst supports its argument that corroborating or expert testimony is necessary to support an award for noneconomic damages with a number of cases: McJennett v. Lake Waynoka Property Owners , 12th Dist. Brown No. 2013-5-006, 2013-Ohio-5767, 2013 WL 6858576 ; Zangrando v. Kuder , 9th Dist. Summit No. 22448, 2006-Ohio-1549, 2006 WL 826081 ; Meyers v. Hot Bagels Factory, Inc. , 131 Ohio App.3d 82, 721 N.E.2d 1068 (1st Dist.1999) ; Motley v. Flowers & Versagi Court Reporters, Inc. , 8th Dist. Cuyahoga No. 72069, 1997 WL 767466 (Dec. 11, 1997). In all of those cases, however, the courts analyzed whether there was sufficient evidence to support the plaintiff's separate and independent cause of action for intentional infliction of emotional distress, which requires a plaintiff to establish that "the defendant intended to cause the plaintiff serious emotional distress." Allen v. Pirozzoli , 8th Dist. Cuyahoga No. 103632, 2016-Ohio-2645, 2016 WL 1600344, ¶ 6. A majority of those cases were also analyzing the issue under summary judgment and directed verdict standards. Here, prior to trial, Kassay voluntarily dismissed his cause of action for intentional infliction of emotional distress. Therefore, those cases have no bearing on our analysis in this case.
{¶ 24} In Hollingsworth v. Time Warner Cable , 168 Ohio App.3d 658, 2006-Ohio-4903, 861 N.E.2d 580 (1st Dist.), the plaintiff was "a young expectant mother who, with her husband, had been anticipating closing on a new home[,]" and was "dependent on her job at Time Warner to pay for the new home." Id. at ¶ 76. At trial, the plaintiff testified that upon being terminated from her job, "she was devastated, hysterically crying, and an emotional wreck" and "had become unmotivated and withdrawn" from her family. Id. She also testified that she visited a psychiatrist and an obstetrician to address her emotional issues. Id. The jury returned a verdict in favor of the plaintiff, and Time Warner moved the court for a new trial, remittitur, and judgment notwithstanding the verdict, which the court denied.
{¶ 25} On appeal, the First District found that even though the plaintiff did not present testimony from either of the professionals she allegedly visited, "[a] plaintiff's own testimony, in combination with the facts and circumstances of a particular case, can suffice to sustain" an award of compensatory damages based on emotional distress. Id. at ¶ 75 ; see also Turic v. Holland Hospitality , 85 F.3d 1211, 1215 (6th Cir.1996) ("A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard."). As a result, the court found that the plaintiff's testimony provided sufficient evidence to support the jury's award for compensatory damages. Id. at ¶ 79.
{¶ 26} After review of the record, we find that, like the plaintiff in Hollingsworth , Kassay presented sufficient evidence upon which the jury could award noneconomic damages for emotional distress. Here, Kassay testified that after losing his job at Niederst, he felt like "[l]ess of a man" and that he was letting his family down. He testified that the loss of his job and income "caused a lot of arguments * * * because of [the lack of] money[.]" See Klesch v. Reid , 95 Ohio App.3d 664, 676, 643 N.E.2d 571 (8th Dist.1994) ("If lay witness observers can testify about changes they observe, we see no reason why the plaintiff herself cannot testify as to the changes that had occurred in her after the [motor vehicle] accident."). He testified that his family's credit was severely impacted, he rarely slept, and his relationships with his daughters suffered *1048 because of the time he spent trying to find another job.
{¶ 27} While the plaintiff in Hollingsworth testified that she visited two doctors to address her emotional distress, and Kassay admitted that he did not visit a doctor or receive treatment for his symptoms, such evidence is not required to show that Kassay actually suffered emotional distress. A jury may award compensatory damages to a plaintiff even though a plaintiff does not present expert testimony or testimony corroborating the plaintiff's emotional distress. See Greig v. Wallick , 5th Dist. Tuscawaras No. 2010AP090036, 2012-Ohio-77, 2012 WL 77022, ¶ 61 ("[E]xpert testimony is not required to support an award of damages for mental anguish."). Jurors are more than capable of determining the severity of a party's emotional distress for purposes of damages without the assistance of expert testimony. Doyle v. Fairfield Mach. Co. , 120 Ohio App.3d 192, 222, 697 N.E.2d 667 (11th Dist.1997), citing Paugh v. Hanks , 6 Ohio St.3d 72, 451 N.E.2d 759 (1983) ("Jurors may rely upon their own personal experiences in determining the severity of appellee's emotional distress."). Because "[t]he assessment of damages is a matter within the sole province of the jury[,]" and Kassay's testimony provided the jury with "some competent, credible evidence" of emotional distress, we will not disturb the jury's award of noneconomic damages in this case. See Srail v. RJF Internatl. Corp. , 126 Ohio App.3d 689, 702, 711 N.E.2d 264 (8th Dist.1998).
2. Punitive Damages
{¶ 28} Niederst also argues that there was insufficient evidence to support the jury's award of $250,000 in punitive damages because there was no evidence of malice.
{¶ 29} A jury may award punitive damages to a plaintiff if "[t]he actions or omissions of th[e] defendant demonstrate malice or aggravated or egregious fraud or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant[,]" and the jury returned a verdict for compensatory damages against the defendant. R.C. 2315.21(C).[6] "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct." Moskovitz v. Mt. Sinai Med. Ctr. , 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994). Before awarding punitive damages, there must be a showing of actual malice. Siebert v. Lalich , 8th Dist. Cuyahoga No. 87272, 2006-Ohio-6274, 2006 WL 3446235, ¶ 42. To do this, a party must establish "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty , 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987). An award for punitive damages serves to punish the offending parties, demonstrate society's disapproval, and deter others from engaging in similar conduct. Sivit v. Village Green of Beachwood, 2016-Ohio-2940, 65 N.E.3d 163, ¶ 53, citing Dardinger v. Anthem Blue Cross & Blue Shield , 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121. In fact, " 'the most important indicum of the reasonableness of a punitive damages award' " is the reprehensibility of the defendant's conduct. Dardinger at ¶ 154, quoting *1049 BMW of N. Am., Inc. v. Gore , 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
{¶ 30} The standard of proof for actual malice is clear and convincing evidence, which "is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Lynch v. Studebaker , 8th Dist. Cuyahoga No. 88117, 2007-Ohio-4014, 2007 WL 2269470, ¶ 48, quoting Siebert . "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful, or gross." Burns v. Prudential Sec., Inc. , 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 103 (3d Dist.), citing Columbus Fin., Inc. v. Howard , 42 Ohio St.2d 178, 327 N.E.2d 654 (1975).
{¶ 31} Here, the parties agreed to the court's following jury instructions on punitive damages:
Punitive damages may be awarded against the defendant or defendants as a punishment to discourage others from committing similar wrongful acts. You * * * may not [award punitive damages] unless you find that Mr. Kassay has met his burden to prove by clear and convincing evidence that the defendant or defendants, A, acted with malice[.] * * * Malice means a state of mind characterized by retaliation or the spirit of revenge or a conscious disregard for the rights and the safety of another person that has a great probability of causing substantial harm.
{¶ 32} The evidence presented during trial shows that Kassay met his burden to show actual malice. Weth and Pacak contradicted one another on a number of occasions. Neither admitted to being involved in the decision to give Kassay FMLA paperwork or to end Kassay's employment, and while Weth testified that Niederst's vice president was involved in the decision, Pacak said she did not know who made the decision. Weth testified that she believed the FMLA paperwork did not pertain to Kassay, but gave it to him anyway. Both Weth and Pacak admitted to consciously disregarding Kassay's attempts to reach either of them, joking about his termination, and not taking corrective measures after realizing their mistakes.
{¶ 33} Kassay testified that when he was finally able to schedule an appointment with his doctor, his doctor informed him that he would not complete the FMLA paperwork because Kassay intended on working and, thus, filling out the paperwork would constitute fraud. Even after the jury returned a verdict in favor of Kassay-finding that Niederst failed to engage in an interactive process or to provide a reasonable accommodation to Kassay, took an adverse action against Kassay because of his perceived disability, and retaliated against him-the owner of the company seemed more concerned about being sued than about her employees' actions affecting Kassay's livelihood and stated that Kassay could return to work if he dropped the lawsuit against Niederst. As a result, there was certainly clear and convincing evidence allowing the jury to infer actual malice from the testimony, conduct, and surrounding circumstances.
{¶ 34} Further, while Pacak and Weth testified that they made an innocent mistake when they improperly provided Kassay with FMLA paperwork, the jury was free to reject that testimony and find that, based on the evidence discussed above, they acted with ill will, hatred, and a conscious disregard of Kassay's rights. See Toole v. Cook , 10th Dist. Franklin No. 98AP-486, 1999 WL 280804, 7 (May 6, 1999) ("While defendants contend that, at worst, defendants simply misunderstood plaintiff's actions as a rejection of the benefits *1050 package, they fail to recognize that on this evidence the jury could reject, and must have rejected, their 'misunderstanding' theory.").
{¶ 35} Niederst additionally argues that part of the court's instructions concerning actual malice was improper. Specifically, it argues that the court's statement-"If you find that defendants retaliated against Mr. Kassay, this finding is sufficient to find malice."-is contrary to law and, therefore, the jury's verdict against Niederst on Kassay's retaliation claim is not sufficient evidence to show actual malice. First, Niederst failed to raise this argument below in its post-trial motion for JNOV, remittitur, or for a new trial, and we will not address it for the first time on appeal. See Walker v. RLI Ents. , 8th Dist. Cuyahoga No. 89325, 2007-Ohio-6819, 2007 WL 4442725, ¶ 52, citing State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections , 65 Ohio St.3d 175, 602 N.E.2d 622 (1992). Moreover, Niederst did not raise this argument as a separate assignment of error on appeal and only argued that the jury instructions were contrary to law for the first time in its reply brief. Niederst only made this argument in support of its position that there was insufficient evidence to support a finding of actual malice, which, as discussed above, we rejected.
{¶ 36} Second, Niederst agreed to the jury instructions and, thus, invited the error. See State v. Bey , 85 Ohio St.3d 487, 493, 709 N.E.2d 484 (1999) ("Even if the trial court had erred by instructing the jury, Bey could not complain because he invited the error by requesting the instruction."); State v. Briscoe , 8th Dist. Cuyahoga No. 89979, 2008-Ohio-6276, 2008 WL 5084720, ¶ 33 ("[A]ccording to the record the parties agreed to the jury instruction on R.C. 2903.02(B) as a lesser included offense to the charge of aggravated murder.").
{¶ 37} Finally, the court's instruction is not contrary to law. The court's instruction did not equate a tort action for retaliation with actual malice as Niederst contends. Instead, the court's instruction follows long-standing law defining actual malice as "revenge" and "retaliation." See Columbus Fin., Inc. , 42 Ohio St.2d at 183-184, 327 N.E.2d 654 ; Lakewood v. Blue Cross & Blue Shield Mut. of N. Ohio , 8th Dist. Cuyahoga Nos. 50266, 50389, and 50482, 1986 WL 7714, 25 (July 10, 1986), citing Pickle v. Swinehart , 170 Ohio St. 441, 166 N.E.2d 227 (1960). Therefore, the instructions were not contrary to law, and there is no plain error.
{¶ 38} Accordingly, we find that there was clear and convincing evidence to support the jury's award of punitive damages and that the court's denial of Niederst's motion for JNOV was proper.
B. Motion for a New Trial
{¶ 39} Niederst also argues that the court erred in denying its motion for a new trial, alleging that Kassay's counsel made improper remarks during his closing argument, causing the jury to award damages based on passion and prejudice. Kassay counters that Niederst waived this issue because (1) it did not object to the comments during the closing argument, (2) it waived the issue as to certain comments because they were not included in Niederst's post-trial motion for a new trial, and (3) his counsel's comments were not prejudicial.
{¶ 40} Civ.R. 50(B) allows a party to file a motion for a new trial jointly with its motion for a JNOV. Under Civ.R. 59(A), a court may grant a new trial based on "[m]isconduct of the jury or prevailing party" or "[e]xcessive or inadequate damages, appearing to have been given under the *1051 influence of passion or prejudice." A court may also grant a new trial within its "sound discretion * * * for good cause shown." Id.
{¶ 41} "The standard of review we apply to a trial court's ruling on a motion for a new trial filed under Civ.R. 59 depends on the grounds for the motion." Austin v. Chukwuani , 2017-Ohio-106, 80 N.E.3d 1199, ¶ 40. We review a motion for a new trial based on opposing counsel's alleged misconduct under Civ.R. 59(A)(2) and (4) for an abuse of discretion. Harris v. Mt. Sinai Med. Ctr. , 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 36 ; Di v. Cleveland Clinic Found. , 2016-Ohio-686, 60 N.E.3d 582, ¶ 112-113. A trial court's denial of a motion for a new trial does not constitute an abuse of discretion if competent, credible evidence supports the verdict. Smith v. Sass, Friedmann & Assocs. , 8th Dist. Cuyahoga No. 81953, 2004-Ohio-494, 2004 WL 229515, ¶ 37.
{¶ 42} Niederst claims that it was denied a fair trial because Kassay's counsel made a number of improper remarks during his closing argument at the first stage of trial and caused the jury to base its award on passion and prejudice.
{¶ 43} " 'A party may freely comment in closing argument on what the evidence has shown and what reasonable inferences the party believes may be drawn therefrom.' " Di at ¶ 108, quoting Peffer v. Cleveland Clinic Found. , 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, 2011 WL 345958. Closing argument allows counsel to summarize the evidence presented and assist the jury in analyzing, evaluating, and applying the evidence. State v. Hinton , 8th Dist. Cuyahoga No. 99581, 2014-Ohio-490, 2014 WL 584965, ¶ 29 ; State v. Merrill , 22 Ohio App.3d 119, 124, 489 N.E.2d 1057 (8th Dist.1984).
{¶ 44} While trial counsel has considerable elbow room within which to argue during closing arguments, " '[i]t is the duty of counsel to refrain from challenging the honor or reputation of a witness, party, or opposing counsel unless warranted by the evidence.' " Peffer at ¶ 60, quoting Jones v. Macedonia-Northfield Banking Co. , 132 Ohio St. 341, 7 N.E.2d 544 (1937). "Abusive comments directed at opposing counsel, the opposing party, and the opposing party's witnesses should not be permitted." Id. , quoting Roetenberger v. Christ Hosp. , 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441 (1st Dist.). "If 'there is room for doubt whether the verdict was rendered upon the evidence, or may have been influenced by improper remarks of counsel, that doubt should be resolved in favor of the defeated party.' " Pesek v. Univ. Neurologists Assn., Inc. , 87 Ohio St.3d 495, 502, 721 N.E.2d 1011 (2000), quoting Warder, Bushnell & Glessner Co. v. Jacobs , 58 Ohio St. 77, 50 N.E. 97 (1898).
{¶ 45} The party moving for a new trial carries the burden to demonstrate that the jury's assessment of damages was influenced by passion or prejudice and not based on the evidence presented Smith , 8th Dist. Cuyahoga No. 81953, 2004-Ohio-494, 2004 WL 229515, at ¶ 41.
In Ohio, it has long been held that the assessment of damages is so throughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive.
Moskovitz v. Mt. Sinai Med. Ctr. , 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994).
{¶ 46} As we previously stated in Di, 2016-Ohio-686, 60 N.E.3d 582,
*1052 [t]o determine whether a verdict was influenced by passion or prejudice, the court should consider the amount of damages returned and whether the record discloses that the verdict was induced by: "(a) admission of incompetent evidence, (b) misconduct on the part of the court of counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded."
Id. at ¶ 119, quoting Fromson & Davis Co. v. Reider , 127 Ohio St. 564, 189 N.E. 851 (1934). A verdict's size alone is insufficient to demonstrate prejudice or passion. Id. at ¶ 120. Instead, "there must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Pesic v. Pezo , 8th Dist. Cuyahoga No. 90855, 2008-Ohio-5738, 2008 WL 4811395, ¶ 23. A trial court should not grant a new trial unless "the jury's assessment of damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." Id. Further, "[a] reviewing court should be particularly circumspect about attributing passion or prejudice to a jury's determination of damages as that is a matter peculiarly in their province." Id.
{¶ 47} In this case, the defendants did not object to Kassay's counsel's remarks during his closing argument. "A party must generally raise a timely objection to preserve a claim of error." Di at ¶ 106, citing Villella v. Waikem Motors, Inc. , 45 Ohio St.3d 36, 543 N.E.2d 464 (1989). Failing to raise an objection waives all but plain error. Schade v. Carnegie Body Co. , 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982). "To constitute plain error, the error must be obvious on the record, palpable, fundamental, so that it should have been apparent to the trial court without objection." Peffer, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, 2011 WL 345958, at ¶ 61. Additionally, an appellant must show that the outcome of the trial would have been different but for the allegedly improper actions to obtain reversal under plain error review. Id. In civil cases,
the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where [the] error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process [and challenges] the legitimacy of the underlying judicial process itself.
Goldfuss v. Davidson , 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.
{¶ 48} Generally, failure to raise a timely objection "prevents reversal absent gross and persistent abuse of counsel's privilege in closing argument." Di at ¶ 106, citing Snyder v. Stanford , 15 Ohio St.2d 31, 238 N.E.2d 563 (1968). But an appellant, who failed to raise a timely objection, may obtain a new trial if " 'gross and abusive conduct occurr[ed] [because] the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct.' " Id. at ¶ 105, quoting Caruso v. Leneghan , 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, 2014 WL 1775577.
{¶ 49} Here, Kassay's counsel suggested multiple times that the defendants do not "understand the concept of right and wrong[,]" that Niederst and its employees did not care about Kassay's rights, well-being, and livelihood, that Weth and Pacak contradicted each other as well as their prior testimony during earlier depositions on multiple occasions, and that the defendants were liars.
{¶ 50} Niederst points to a number of cases in support of its argument that Kassay's counsel's remarks caused the jury to *1053 act on passion and prejudice: Thamann v. Bartish , 167 Ohio App.3d 620, 2006-Ohio-3346, 856 N.E.2d 301 (1st Dist.) ; Roetenberger v. Christ Hosp. , 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441 (1st Dist.) ; and Pesek , 87 Ohio St.3d 495, 721 N.E.2d 1011.
{¶ 51} In Thamann , the appellate court found that it was "clear" that the defense counsel's strategy was to inflame the jury "by repeatedly making improper remarks about the plaintiff, his counsel, and their expert witnesses." Id. at ¶ 45. It found that "he repeatedly told the jury that [the plaintiffs and their witnesses] engaged in lies, manipulations, and half-truths in order to manipulate the jury into awarding the plaintiff a big verdict." Id. Further, it found that the trial court's cautionary instructions and sustaining of plaintiff's objections were not enough to cure the prejudice caused by those comments. Id. at ¶ 47. The court concluded that "when viewed in their entirety, [defense counsel's comments] demonstrate a pattern of misconduct by defense counsel that warrant[ed] reversal." Id.
{¶ 52} In Roetenberger , the court found that the defense counsel's "attacks on Roetenberger, his counsel, and his witnesses were 'inexcusable, unprincipled, and clearly outside the scope of final argument.' " Id. at ¶ 11. The court found that "reviewing defense counsel's closing statement as a whole, * * * there was a substantial likelihood that the jury was misled and that the verdict was influenced by defense counsel's improper remarks." Id.
{¶ 53} Finally, in Pesek , the counsel for the appellees made "various assertions and drew many inferences that were simply not warranted by the evidence" during the defendants' closing argument. Id. at 501, 721 N.E.2d 1011. The court found that counsel's attacks on the appellant's trial counsel and expert witnesses were "inexcusable, unprincipled, and clearly outside the scope of final argument." Id. Because counsel's closing argument created "an atmosphere 'surcharged with passion or prejudice[,]' " the court reversed the jury's verdict based on that misconduct. Id. at 501-502, 721 N.E.2d 1011.
{¶ 54} Upon review, we find that Kassay's counsel's statements do not rise to the same level as those made in Thamann , Roetenberger, and Pesek , and that Kassay's counsel's remarks were not so flagrant that they required the trial court to intervene sua sponte.[7] Many of counsel's statements alleged that the defendants were unable to understand or did not care about the differences between right and wrong. Counsel's other statements concerned the company owner's demeanor at trial, the inconsistencies between witnesses' testimony, and the fact that none of the defendants took responsibility for placing Kassay in an impossible position.
{¶ 55} We also find that Kassay's counsel's statement concerning Niederst's trial counsel-"[w]ith all due respect to [defense counsel], I don't even think he believed what he was telling you. I think he got up here, and he said some of what *1054 each of his clients were saying, but I don't think he even believed it"-did not disparage counsel in such a way as to prejudice the trial and verdict.
{¶ 56} Even when considered in their entirety, we cannot say that counsel's comments were outside the permissible bounds of closing argument or that they were so outrageous as to create doubt that the jury would have come to a different conclusion. In fact, the jury's award itself is evidence that it did not act on passion and prejudice-Kassay asked the jury to award $500,000 in punitive damages, but the jury only awarded $250,000.
{¶ 57} Furthermore, the court instructed the jury, both prior to the closing arguments and during the final charge, that statements made during the closing arguments were not evidence. Because we presume that a jury follows a trial court's instructions, we find that the court's instruction cured any prejudice that counsel's statements may have caused. See Hinkle v. Cleveland Clinic Found. , 159 Ohio App.3d 351, 2004-Ohio-6853, 823 N.E.2d 945, ¶ 70 (8th Dist.).
{¶ 58} Niederst additionally argues that counsel mischaracterized the witnesses' testimony to inflame the jury. It argues that counsel's statement that Niederst employees "got caught destroying evidence"-namely, Pacak's work calendar where she kept notes of employee absences and leave-was unsupported by the evidence because it had no duty to preserve the calendar and the statement inflamed the jury. We find that that single statement does not show that the jury's verdict was based on passion and prejudice and, as mentioned above, that the court cured any impropriety through its instructions to the jury. Further, in light of the fact that Niederst agreed to a jury instruction on spoliation of evidence, we cannot say that Kassay's counsel was not permitted to comment on the absence and questionable destruction of Pacak's work calendar.
C. Remittitur
{¶ 59} Finally, Niederst argues that the trial court erred when it denied its motion for remittitur. It contends that the $250,000 award for noneconomic damages and the $250,000 award for punitive damages were not supported by the evidence.
{¶ 60} We review a trial court's denial of remittitur for an abuse of discretion. Austin, 2017-Ohio-106, 80 N.E.3d 1199, at ¶ 33. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. Id. If we find that the trial court abused its discretion in denying remittitur, we have the " 'same power to order remittitur as does the trial court.' " Campanella v. Commerce Exchange Bank , 139 Ohio App.3d 796, 812, 745 N.E.2d 1087 (8th Dist.2000), citing Chester Park Co. v. Schulte , 120 Ohio St. 273, 166 N.E. 186 (1929).
{¶ 61} "While JNOV pertains to the sufficiency of the evidence, remittitur pertains to the manifest weight of the evidence." Austin at ¶ 32. Before ordering a remittitur, a trial court must find that " '(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages.' " Harris, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, at ¶ 39, quoting Wightman v. Consol. Rail Corp. , 86 Ohio St.3d 431, 715 N.E.2d 546 (1999). "The denial of a motion for remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is excessive and against the manifest weight of the evidence."
*1055 Sarka v. Love , 8th Dist. Cuyahoga No. 85960, 2005-Ohio-6362, 2005 WL 3215138, ¶ 27. Reversing a jury's damage award is only appropriate if the award is "so disproportionate as to shock reasonable sensibilities." Id. , quoting Jeanne v. Hawkes Hosp. of Mt. Carmel , 74 Ohio App.3d 246, 598 N.E.2d 1174 (10th Dist.1991).
{¶ 62} Having found that the jury's damage award was free from passion or prejudice and was supported by the evidence, we will not disturb the jury's awards based on excessiveness. Niederst argues that the jury's award for noneconomic damages for $250,000 was "not supported by the evidence because of the disparity between the jury's economic and the jury's non-economic and punitive damages awards." We disagree.
{¶ 63} "Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for" the jury's. Smith , 8th Dist. Cuyahoga No. 81953, 2004-Ohio-494, 2004 WL 229515, at ¶ 44, quoting Villella , 45 Ohio St.3d 36, 543 N.E.2d 464. Thus, we find that the disparity between the awards is not enough to show that the jury's award for noneconomic damages was against the manifest weight of the evidence. In fact, as we stated earlier, there was sufficient evidence concerning Kassay's emotional distress from which the jury could conclude that he suffered a great deal and impose $250,000 in noneconomic damages.
{¶ 64} We conclude similarly as to the jury's award for punitive damages. While we consider a number of factors when reviewing a punitive damages award for excessiveness-"(1) the degree of reprehensibility of the party's conduct, (2) the ratio of punitive damages to the actual harm inflicted by the party, and (3) sanctions for comparable conduct"-punitive damages are not to be calculated using a precise mathematical formula. Northpoint Props. v. Charter One Bank , 8th Dist. Cuyahoga No. 100210, 2014-Ohio-1430, 2014 WL 1327924, ¶ 81, citing Barnes v. Univ. Hosps. of Cleveland , 119 Ohio St.3d 173, 2008-Ohio-3344, 893 N.E.2d 142.
{¶ 65} In fact, "[a] large disparity [between punitive damages and compensatory damages] is allowable because a punitive damages award is more about a defendant's behavior than the plaintiff's." Id. , citing Wightman , 86 Ohio St.3d 431, 715 N.E.2d 546. As we noted in Northpoint , "cases involving economic injury can warrant an award of substantial punitive damages when the harm is committed 'intentionally through affirmative acts of misconduct or when the party is financially vulnerable.' " Id. at ¶ 90, quoting BMW of N. Am., Inc. v. Gore , 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Based on our previous discussion of the evidence presented concerning Niederst and its employees' actions, we find that there was clear and convincing evidence to support the jury's finding of actual malice on part of Niederst as well as its award for punitive damages.
{¶ 66} Accordingly, we overrule Niederst's sole assignment of error.
{¶ 67} Judgment affirmed.
MELODY J. STEWART, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR

Prior to trial, Kassay subsequently voluntarily dismissed his claim for intentional infliction of emotional distress without prejudice.

The following are the jury interrogatories as to Niederst and to which the jury unanimously answered "yes":
1. Do you find that Plaintiff John Kassay has proven by a preponderance of the evidence:
That he was disabled; or
That he had a physical impairment; or
That Defendant Niederst Management, Ltd. perceived Plaintiff John Kassay to be disabled; or
That Defendant Niederst Management, Ltd. perceived Plaintiff John Kassay to have a physical impairment?
2. Do you find that Defendant Niederst Management, Ltd. failed to engage in an interactive process or to provide a reasonable accommodation to Plaintiff John Kassay?
3. Do you find that Defendant Niederst Management, Ltd. had a "100 Percent Health" policy?
4. Do you find that Defendant Niederst Management, Ltd. took an adverse action against Plaintiff John Kassay because of his actual or perceived disability or physical impairment?
5. Do you find that Defendant Niederst Management, Ltd. took adverse actions against Plaintiff John Kassay because he complained about disability discrimination at Niederst Management, Ltd.?

The jury also awarded Kassay $1,000 in compensatory damages against Pacak and $100 in compensatory damages against Weth.

The jury also awarded Kassay $1,000 in punitive damages against Pacak and $.01 in punitive damages against Weth.

After trial, Weth filed motions on her own behalf that included allegations that her counsel, who also served as counsel for Niederst and Pacak, did not serve her interests. As a result, her counsel withdrew from her representation.

R.C. 2315.21(B) also requires that, upon the motion of any party, the trial shall be bifurcated, separating the jury's determination for compensatory damages and punitive damages.

Kassay argues that Niederst waived this argument as to a number of statements made by his counsel in closing argument because Niederst only identified a few, specific statements as being improper in its motion, yet identified additional statements in its appellate brief. We reject Kassay's waiver argument, however, because Niederst's argument for a new trial under Civ.R. 59(A) necessarily requires us to review Kassay's counsel's closing argument in its entirety for misconduct and prejudice. See Thamann , 167 Ohio App.3d 620, 2006-Ohio-3346, 856 N.E.2d 301, at ¶ 47 ; Roetenberger , 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, at ¶ 11.