[Cite as *State Auto Property & Cas. Ins. Co. v. Abco Fire Protection, Inc.*, 2021-Ohio-1189.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE AUTO PROPERTY &
CASUALTY INSURANCE
COMPANY, ET AL.,                        :

       Plaintiffs-Appellants,          :

                               No. 109627

       v.                              :

ABCO FIRE PROTECTION, INC.,             :

       Defendant-Appellee.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 8, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-885649

---

### *Appearances:*

Collins, Roche, Utley & Garner, L.L.C., David L. Lester, and Paul D. Eklund, *for appellant* Charter Oak Fire Insurance Company.

Connick Law, L.L.C., and Thomas J. Connick, *for appellee.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Charter Oak Fire Insurance Company appeals from the jury verdict rendered in its favor, and against ABCO Fire Protection, Inc., totaling $5,324.09

upon its claim for negligence and $6,594.08 upon its claim for breach of contract.[1] For the following reasons, we affirm.

{¶ 2} In January 2016, a fire broke out in a chimney used to exhaust smoke and heat from a wood-fired oven installed in a restaurant in the Tremont neighborhood of Cleveland — Lolita, owned by celebrity chef Michael Symon. Following the fire, Lolita permanently ceased operations. The fire was believed to have started from a spark or floating ember that ignited creosote in the chimney. The type of chimney installed in the restaurant is designed to contain any fires that start from within; however, in this case, the fire escaped and heavily damaged the second story of the structure, and the first floor suffered water and smoke damage. It was alleged that access panels and a spark arrestor (that would have prevented the spark from igniting the creosote) in the chimney ductwork were not properly secured or were missing and that the chimney was improperly installed in close proximity to combustible materials in violation of the requisite standards. Lolita contracted with ABCO to clean the restaurant's chimneys once a month. The fire occurred two weeks after a monthly cleaning was performed.

{¶ 3} Charter Oak insured Lolita under a commercial policy. The insurance company paid $989,998.92 to the owners of Lolita based on the damages sustained during the fire, demonstrated by the following chart:

---

[1] The co-plaintiff State Auto Property & Casualty Insurance Company, which was awarded $25,442.09 in damages upon its claims for negligence against ABCO, is not a party to this appeal.

| | |
|---|---:|
| Tenant's Improvements and Betterments | $479,276.26 |
| Damaged Contents | $340,127.99 |
| Personal Property of Others | $3,285.98 |
| Art Restoration | $3,487.24 |
| Computer Restoration | $23,745.86 |
| Contents storage | $2,073.60 |
| Subtotal | $851,996.93 |
| Less Deductible | -$2,500.00 |
| Subtotal | $849,496.93 |
| Plus Business Interruption | $140,502.00 |
| Total Loss Payment | $989,998.92 |

Thereafter, Charter Oak filed its complaint against ABCO, asserting its right to subrogation. "Subrogation is defined as 'the substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.'" *Indiana Ins. Co. v. Barnes*, 165 Ohio App.3d 262, 2005-Ohio-6474, 846 N.E.2d 73, ¶ 17 (10th Dist.), quoting *Black's Law Dictionary* 101 (8th Ed.2004).

{¶ 4} In this case, Charter Oak claims it was obligated under the terms of its insurance contract with the restaurant owners to cover the damages caused by a breach of contract between the insured and a hired contractor — based on allegations of breaches of a warranty or failing to perform services in a workmanlike manner — and the "negligent" performance of those contractual services.

{¶ 5} At trial, Charter Oak's adjuster generally testified that the above amounts were paid to the restaurant owners based on the standard claims process. The adjuster did not provide a valuation on the property damaged but simply

reiterated what was paid to the insured based on evaluations submitted by outside venders or computer-generated estimates produced by a program generally used in the insurance industry. A content appraiser provided some evidence of the fair market value of 30 items of personal property included in the above summarization. According to the appraiser, those items were valued at $56,634.99, although $118,523.50 was paid to Lolita.

{¶ 6} According to Charter Oak, ABCO breached its monthly contract to clean exhaust hoods, for which it charged $600 to clean three hoods, by failing to clean the chimney to bare metal two weeks before the fire and that ABCO was responsible for removing the access panels and spark arrestor that it was allegedly obligated to maintain, although Lolita representatives testified that ABCO's responsibility did not include the fire suppression systems.

{¶ 7} ABCO claims that the restaurant owners were at fault in failing to maintain the chimney's access panels and safety devices because the contract was not for safety consulting services and the installation was negligently performed because the chimney was installed too near combustible materials. The jury largely agreed with ABCO, apportioning 90 percent of the tort liability to the restaurant owners and the nonparty installation company under R.C. 2307.23(A)(2). The jury also concluded that ABCO was in breach of its contract with the restaurant owners by failing to perform its services in a workmanlike manner, the damages for which Charter Oak claimed under a right to subrogation.

{¶ 8} This case presents a confusing theory of liability and damages that cannot be ignored. The complaint included duplicative claims sounding in tort and contract. Charter Oak alleged that ABCO breached its express or implied warranties in the contract, or failed to perform the services in a workmanlike manner as obligated under the contractual relationship. The factual allegations supporting those breach of contract claims are nearly identical to the ones advanced in support of the negligence claim.

{¶ 9} Generally in Ohio, a "breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist.1996), citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir.1981); *Dayton Children's Hosp. v. Garrett Day, L.L.C.,* 2019-Ohio-4875, 149 N.E.3d 1004, ¶ 111 (2d Dist.), citing *Kott v. Gleneagles Professional Builders & Remodelers, Inc.*, 197 Ohio App.3d 699, 2012-Ohio-287, 968 N.E.2d 593, ¶ 15 (6th Dist.), and *Med. Billing, Inc. v. Med. Mgt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir.2000). A tort claim can only exist independent of the contract if the plaintiff can establish the existence of a duty created outside that which was created by the terms of the contract. *Textron Fin. Corp.* "When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract." *Corporex Dev. & Constr. Mgt. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 10.

{¶ 10} During trial a disagreement arose as to the scope of damages available in contract, after ABCO sought to dismiss the negligence claims based on the

aforementioned principle of black-letter law, in the attempt to winnow the issues for trial. In seeking a directed verdict, ABCO claimed that the proposed instructions and interrogatories broadly permitted Charter Oak to recover the same measure of damages as between the breach of contract and negligence claims without presenting the claims as being in the alternative to one another. ABCO also sought a directed verdict, in part, claiming that Charter Oak was seeking duplicative claims of negligence that solely arose from obligations created through contract. During that discussion, Charter Oak conceded that its negligence and breach of contract claims were identical. Tr. 297:10-13. Charter Oak later claimed that the tort and breach of contract claims were independent of each other, although it was still conceded that the damages from the breach of contract claim were the same "if not wholly the same" as the damages alleged to have occurred as a result of the negligence claim. Tr. 1049:11-15; 1051:15-17. The trial court denied the motion for a directed verdict on Charter Oak's negligence claim, expressly permitting both claims to be presented to the jury despite the conceded fact that the claims were identical in both establishment of the duty and the resulting damages.

{¶ 11} Compounding this confusion, the jury instructions, ultimately given over ABCO's objection, essentially permitted Charter Oak to recover damages without differentiation as between the breach of contract and negligence claims. The jury instruction provided, at the request of Charter Oak, that the jury could award damages "that would be the natural and probable result of the breach of the contract or that would [be] reasonably within the contemplation of the parties as the

probable result of the breach of the contract." This instruction harkens back to *Hadley v. Baxendal*, 156 Eng. Rep. 145 (1854), that consequential damages for breach of contract are subject to the rule that a plaintiff is only "entitled to recover such damages as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract * * *." *Devereux v. Buckley & Co.*, 34 Ohio St. 16, 21 (1877), quoting *Hadley*. At no time did Charter Oak attempt to provide the jury with a differentiation of the damages or liability attributable to the breach of contract claims and that of the negligence claim — seamlessly interchanging the damages as between claims. In fact, in closing, Charter Oak specifically asked the jury to enter a verdict solely based on what it paid to Lolita's owners without any distinction between the tort and contract claims. Tr. 1257:4-14. In light of Charter Oak's argument against directing a verdict on the negligence claim, the jury was left to sort the difference between the claims and the appropriate measure of damages on its own.

{¶ 12} With respect to the evidence of damages, Charter Oak's evidence at trial was limited to the documentation of what it paid to the restaurant owners as a result of the insurance claim, as presented through the adjuster who collected and categorized the information on the damaged property. Charter Oak presented only two other witnesses to quantify the value of the property damaged: one who appraised 30 items representing approximately one-tenth of Charter Oak's claimed damages and another who estimated Lolita's lost income caused by the fire, although the witness provided no foundation for the $140,000 that Charter Oak

paid on that aspect of the claim. The determination of the lost income was calculated by a financial expert who did not testify at trial.

{¶ 13} As ABCO continually argued throughout the lower court's proceedings, there was no direct evidence of the value of the damaged property presented — the primary evidence was what Charter Oak paid to the insured based on the depreciation value of the personal property damaged in the fire totaling nearly $1 million. With respect to the business property, Charter Oak determined the value of the insurance claim by taking the purchase price of items damaged in the fire, calculating their useful lifespan based on an unstated formula, and deducting that depreciated value based on the age of the items — so, for example, if the pizza oven was purchased new for $36,000 and had a useful life of ten years, each year owned would decrease the value of the oven by $3,600 regardless of the condition of the oven at the time of the injury. If the pizza oven was heavily abused and worth half its original value, Charter Oak's method of valuation would overvalue it. Charter Oak conceded that only $118,523.50 of the $989,988.92 sought from the jury had the fair market value analysis conducted. The fair market value of the 30 items appraised was calculated as being $56,634.99.

{¶ 14} With respect to the portion of the damages sought based on the restaurant's build out of the leased space, Charter Oak's evidence relied on presenting evidence of what it would cost to rebuild the restaurant — the "tenant's improvements and betterments" that represented almost half the value of Charter Oak's claim. In the commercial space, the owners of Lolita had to build out the

interior space to accommodate and operate the restaurant. The adjuster in this case testified at trial that the value of the tenant's improvements and betterments was based on the estimated cost to replace the interior build out — such as the interior flooring, wall structures, drywall, and paint. Tr. 869:6-14. The owners of Lolita did not rebuild the restaurant.

{¶ 15} The jury returned general verdicts in favor of Charter Oak, finding that ABCO breached its contract with the restaurant owners causing $6,594.08 in damages; apportioning 10 percent of the liability against ABCO; and awarding 53,240.99 in damages caused by the joint negligence of ABCO and nonparties Lolita and the installer of the chimney ductwork. Charter Oak's damages on the negligence claim were reduced under R.C. 2307.22(A)(2).

{¶ 16} In this appeal, Charter Oak advances two assigned errors. In the first, it claims the jury's verdict is against the weight of the evidence, and in the second, that the trial court erred by not permitting Charter Oak's expert to supplement his report two weeks before trial. Neither claim has merit.

{¶ 17} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972

N.E.2d 517, ¶ 17 (overruling the distinction between civil and criminal weight-of-the-evidence review). As part of this review, appellate courts sit as the thirteenth juror with the ability to disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). This, however, does not invite courts of review to entertain reversals solely based on a disagreement with the outcome. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against" the verdict. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} We note, however, that it appears that Charter Oak is challenging the trial court's denial of its motion for a new trial in which it was claimed that the amount awarded as damages was inadequate under Civ.R. 59(A)(4). Civ.R. 59(A) provides, in pertinent part, that a new trial may be granted for excessive or inadequate damages appearing to have been given under the influence of passion or prejudice, under Civ.R. 59(A)(4), or can be granted if the judgment is not sustained by the weight of the evidence, under Civ.R. 59(A)(6). Thus, the rule differentiates the standard for a new trial based on the weight of the evidence from that used when challenging the amount of damages. *Black v. Hicks*, 2020-Ohio-3976, 157 N.E.3d 193, ¶ 80 (8th Dist.) (appellant failed to file a motion for a new trial claiming excessive damages as required to preserve the claim for appellate review).

{¶ 19} "'In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to

disturb the jury's assessment absent an affirmative finding of passion and prejudice.'" *McGugan v. Olszewski*, 8th Dist. Cuyahoga No. 109099, 2020-Ohio-4992, ¶ 16, quoting *Kassay v. Niederst Mgt.*, 2018-Ohio-2057, 113 N.E.3d 1038, ¶ 45 (8th Dist.), and *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 1994-Ohio-324, 635 N.E.2d 331. In considering the excessiveness or inadequateness of damages awarded by the jury, "'there must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury.'" *Id.*, quoting *Kassay* at ¶ 46 and *Pesic v. Pezo*, 8th Dist. Cuyahoga No. 90855, 2008-Ohio-5738, ¶ 23. Review of a trial court's decision with respect to a motion for a new trial is generally reviewed under the abuse-of-discretion standard, *Koerper v. Szabo*, 10th Dist. Franklin No. 18AP-734, 2019-Ohio-3159, ¶ 32, contrasting with the weight-of-the-evidence review for which the appellate court acts as the "thirteenth juror" unconstrained by the lack of evidence demonstrating that the damages awarded were done so by an enflamed or impassioned jury. *See, e.g., Jawary v. Underwood*, 8th Dist. Cuyahoga No. 108424, 2020-Ohio-5176, ¶ 9 (relying on the weight-of-the-evidence standard in determining that inadequate damages were awarded as the justification for a new trial on damages without any evidence of the jury award being issued under the passion and prejudice analysis of Civ.R. 56(A)(4)).

{¶ 20} It might well be time for this issue to be addressed by the Ohio Supreme Court to resolve the appropriate standard of review over assignments of error in which an unsatisfied party claims that the damages awarded by the trier of

fact were inadequate or excessive. As it stands under Ohio law, such a claim can be advanced under the abuse-of-discretion standard in reviewing the trial court's resolution of a motion for new trial under Civ.R. 59, under the undue passion or prejudice analysis of Civ.R. 59(A)(4), or under the weight-of-the-evidence review, unencumbered with the limited review presented by the first two options. This case does not present the vehicle to resolve such a monumental issue because this distinction is not relevant to any of the arguments presented.

{¶ 21} Regardless of whether we consider that the damages were awarded under the influence of passion or prejudice under Civ.R. 59(A)(4), which Charter Oak does not even address under App.R. 16(A)(7), or through application of the weight-of-the-evidence standard, the outcome is the same. For this reason, we will address the arguments as presented rather than attempt to unravel the differences between Civ.R. 59(A)(4) and (A)(6). We simply note that if the drafters of Civ.R. 59 had intended the weight-of-the-evidence standard to equally apply to inadequate or excessive damages claims, there would have been no need to provide the two grounds as being in the alternative.

{¶ 22} Charter Oak claims that the jury lost its way in awarding $5,324.09 upon its claim for negligence and $6,594.08 for the breach of contract because it paid its insured $989,998.92 for the damage caused by the fire. Even in this appeal, Charter Oak has failed to distinguish between the contract and tort claims, asking for us to review both claims as one. We cannot accept that invitation from a legal standpoint; recovery under tort law is independent of any recovery that may be had

under principles of contract. *See Corporex Dev. & Constr. Mgt.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 10. This complicates any analysis since we are unable to determine the theory of liability underlying the resulting damages for the purposes of determining whether the trier of fact lost its way. Since this confusion stems from Charter Oak, that cannot be the basis of finding error. Regardless, the damages were not demonstrated to be inadequate.

{¶ 23} Charter Oak stands in Lolita's shoes under the basic principles of subrogation. What it paid to its client under the terms of their contract is not evidence of the damages recognized under either tort or contract principles. As the jury was instructed in this case:

> The measure of damages for improvements to real property, such as a building, [or personal property] depends on whether the damage is permanent or temporary. [If] the damage to the property is temporary such that the property can be restored to its original condition[,] the owner may recover the reasonable costs of these necessary repairs. * * * the measure of damages for personal property that it destroys [is] the reasonable value of the property to owner. * * * In arriving at an amount you may consider the original cost, the costs to replace such property, less reasonable depreciation for its condition and use, the uses which the plaintiff has for the property and other facts in the evidence.

Tr. 1224:3-1225:12. Lolita did not reopen the restaurant, and there is no evidence that any of the damaged property was repaired. The testimony was limited to describing the need to replace the permanently damaged property based on evaluations conducted by contractors whom Charter Oak or the insured hired, but none of whom testified at trial — a point highlighted to the jury by ABCO. Further, there was no information as to the actual condition of the damaged property such

that the cost to be replaced less the reasonable depreciation for its condition and use could be considered.

{¶ 24} The jury's ultimate conclusion with respect to the total damages awarded on the tort claim, $53,240.99, was roughly in line with the market value of the 30 items appraised at $56,634.99. In other words, the jury could have reasonably accepted ABCO's argument with respect to the need for Charter Oak to demonstrate the fair market value of the damaged property instead of relying on the blanket assertions of what was paid to its insured under the terms of the insurance contract. The difference between the values could have been a product of the jury leafing through the 200 pages of paperwork that Charter Oak tasked the jury with reviewing. Tr. 1257:4-14. With respect to the contract damages awarded by the jury, the record is simply devoid of any indication of how the jury reached its conclusion as to damages, and Charter Oak has not provided any explanation as to how the contract damages, based on the same allegations underlying the tort claims, could have been separately awarded.

{¶ 25} "[T]he presumption of the law is that the action of the court is legal until the contrary affirmatively appears, and the burden is upon one who claims the existence of error to affirmatively so show." *Makranczy v. Gelfand,* 109 Ohio St. 325, 331, 142 N.E. 688 (1924); App.R. 16(A)(7). In this case, Charter Oak has not demonstrated this to be the exceptional case warranting appellate intervention, let alone has it been explained how the jury's decision to reject Charter Oak's presentation of damages could be deemed the result of anything but a reasoned

determination based on the evidence presented at trial. *Weidner v. Blazic*, 98 Ohio App.3d 321, 334, 648 N.E.2d 565 (12th Dist.1994), citing *Litchfield v. Morris*, 25 Ohio App.3d 42, 495 N.E.2d 462 (10th Dist.1985). "The assessment of damages is a matter within the province of the jury," and in order to demonstrate that the jury lost its way or awarded damages under the influence of passion or prejudice, there must be something more than the fact that the jury rejected the plaintiff's claims. *Id.* Challenging "the mere size of the jury award alone is not sufficient to prove passion and prejudice." *Black*, 2020-Ohio-3976, 157 N.E.3d 193, at ¶ 78 (8th Dist.), citing *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, 899 N.E.2d 1054, ¶ 18 (3d Dist.), *Elwer v. Carrol's Corp.*, 3d Dist. Allen No. 1-06-33, 2006-Ohio-6085, ¶ 14, and *Pearson v. Cleveland Acceptance Corp.*, 17 Ohio App.2d 239, 245, 246 N.E.2d 602 (8th Dist.1969).

**{¶ 26}** From the record presented, we cannot conclude that the jury lost its way in rendering its verdict. Charter Oak's claim that it was entitled to the full amount paid to its insured based on the jury's finding ABCO negligent or in breach of its contract with Lolita cannot be accepted as a matter of law. Liability and damages must be separately proven. The finding of liability did not automatically entitle Charter Oak to all the damages asserted. The jury was still required to assess whether Charter Oak proved the damages by a preponderance of the evidence, whether we consider the judgment under either tort or contract principles. The first assignment of error is overruled.

{¶ 27} In the second assignment of error, Charter Oak challenges the trial court's decision to deny leave for Charter Oak's experts to provide supplemental reports two weeks before trial. Charter Oak had been storing the damaged exhaust hoods and other artifact evidence in its laboratory. ABCO requested access to the items to adequately prepare for trial. Both parties had timely produced expert reports under Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division, and the trial court's case management order, and there is no indication that ABCO's request for the inspection was to solicit additional opinions from its experts.

{¶ 28} Following the onsite inspection, Charter Oak's experts sought to supplement their report to include additional opinions as to liability but failed to seek leave of court for such a supplement under the unambiguous language of Loc.R. 21.1. According to Charter Oak, the experts' supplemental opinions were vital to its prosecution because the new theories presented an alternate theory of how the fire spread from its point of origin. The theory posited that the fire did not spread through cracks in the welds and could only have spread through the missing access panels, contradicting the claim that the improper installation caused a majority of the damage.

{¶ 29} Charter Oak claims that its expert report was necessary to proving liability, and therefore, the trial court committed prejudicial error by excluding its evidence. Charter Oak prevailed on liability. Any error with respect to the exclusion of the alternate theories debunking defenses to the liability question was mooted by

the jury's verdict in Charter Oak's favor.  None of the experts' opinions in the belated supplemental reports addressed the damages issue that is now being appealed. Under these circumstances, we need not consider Charter Oak's argument.  The second and final assignment of error is overruled.

{¶ 30} We affirm.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR

Keywords: 109627 -- State Auto Property & Casualty Insurance Co., et al. v. ABCO Fire Protection, Inc.

Motion for new trial; Civ.R. 59; subrogation; expert report; Loc.R. 21.1; weight of the evidence; breach of contract; negligence.

The jury's damages award was not against the weight of the evidence and in light of the fact that the jury found the defendant liable, there can be no error with the trial court's decision to preclude the plaintiffs from supplementing their experts' reports two weeks before trial to include an additional basis for liability.